

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

JOEL AUSTIN,
                        :     16-cv-4446 (JSR)

    Petitioner,           :

                      :     06-cr-991 (JSR)

    -v-                  :

                      :     OPINION AND ORDER

UNITED STATES OF AMERICA,     :

                      :

    Respondent.          :

------------------------------------------x

JED S. RAKOFF, U.S.D.J.

Before the Court is the motion of petitioner Joel Austin to vacate his sentence and order his release. The motion is granted.

The pertinent facts are as follows: On September 19, 2006, police found an unloaded gun in Austin's pocket during a search incident to arrest for jumping a turnstile. He pleaded guilty to possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

The statutory maximum for a § 922(g) violation is typically 10 years. 18 U.S.C. § 924(a)(2). However, the Court found that it was bound by the sentencing provision of the Armed Career Criminal Act ("ACCA") that requires a 15-year mandatory minimum sentence for defendants who have three previous convictions for a "violent felony." 18 U.S.C. § 924(e)(1). In Austin's case, those convictions were: (1) an October 21, 1987 conviction for second-degree robbery in violation of New York Penal Law § 160.10; (2) a different October 21, 1987 conviction for attempted second-degree robbery in

1

violation of New York Penal Law §§ 110.00, 160.10; and (3) a July 9, 1997 conviction for attempted third-degree robbery in violation of New York Penal Law §§ 110.00, 160.05. Pursuant to ACCA, the Court, on August 16, 2007, sentenced Austin to a term of imprisonment of 180 months to be followed by a three-year term of supervised release.

Austin now argues that subsequent Supreme Court cases have made clear that none of the three offenses on which his enhanced sentence was predicated are in fact "violent felonies" under ACCA. On November 6, 2017, Magistrate Judge Netburn provided this Court with an excellent report recommending that Austin's motion be granted. See Report and Recommendation, ECF No. 39 ("R&R").[1] The government timely objected. See Government's Objections to the November 6, 2017 Report and Recommendation, ECF No. 40 ("Gov't Mem.").[2] For the following reasons, the Court finds itself in agreement with Judge Netburn's well-reasoned recommendation and holds that neither third- nor second-degree robbery in New York is a categorically violent felony under ACCA.

---

[1] All citations to the docket are to Docket Number 06-cr-991.

[2] The government objected only to Judge Netburn's conclusions regarding the substantive merits of Austin's motion, not to her conclusions that Austin's claim is timely and properly based on a new rule of constitutional law under 28 U.S.C. § 2255(h)(2). See R&R at 6-8. The Court agrees with and adopts these latter, unopposed conclusions.

New York defines "robbery" as "forcible stealing." N.Y. Penal Law § 160.00.

> A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

Id. Forcible stealing alone is robbery in the third degree, N.Y. Penal Law § 160.05, while second- and first-degree robbery additionally require the presence of certain aggravating factors. See N.Y. Penal Law §§ 160.15 (first-degree), 160.10 (second-degree).

ACCA provides three clauses defining what types of crimes qualify as "violent felonies." The "force clause" covers any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another."[3] The "enumerated offenses" clause covers any crime that "is burglary, arson, or

---

[3] Several other statutes define "crime of violence" using similar force clauses. See 18 U.S.C. § 924(c)(3)(A) (firearm sentencing enhancement); U.S.S.G. § 4B1.2(a)(1) (Career Offender Guidelines); 18 U.S.C. § 16(a) (general criminal law definition). Interpretation of these clauses is persuasive authority regarding the correct interpretation of ACCA's force clause. See United States v. Walker, 595 F.3d 441, 443 n.1 (2d Cir. 2010).

extortion, [or] involves the use of explosives." And the "residual clause" covers any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C § 924(e)(2)(B).

To determine whether a particular offense qualifies as a "violent felony" under ACCA, courts apply a "categorical approach," assessing "whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" Johnson v. United States, 135 S. Ct. 2551, 2557 (2015) (quoting Begay v. United States, 553 U.S. 137, 141 (2008)).

At the time of Austin's sentencing, the Second Circuit had squarely held that New York third-degree robbery is a violent felony under the force clause of ACCA. See United States v. Brown, 52 F.3d 415 (2d Cir. 1995). The Brown court relied on the fact that New York's definition of "robbery" closely tracks the language in the force clause — i.e., "uses or threatens the immediate use of physical force upon another person" in the robbery statute is very similar to "use, attempted use, or threatened use of physical force against the person of another" in ACCA. Based on this textual similarity alone, the Court of Appeals held that "the statutory definition of [third-degree robbery] plainly reveals that it is a 'violent felony' under § 924(e)(2)(B)(i)." Id. at 426. Because first- and second-degree robbery also require "forcible stealing,"

they are also violent felonies under Brown. See also United States v. Spencer, 955 F.2d 814, 820 (2d Cir. 1992) (holding that third-degree robbery is a "crime of violence" under U.S.S.G. § 4B1.2 because both require the use of "physical force").

The Second Circuit has yet to overturn these decisions. However, in a decision post-dating Brown and Spencer, the Supreme Court of the United States clarified that "physical force" in ACCA's force clause means "violent force – that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). Moreover, a mere potential for some small pain or minor injury will not suffice. Rather, "violent" force must be "substantial" and "strong." Id. at 140.

The Supreme Court in Johnson favorably quoted the definition of "violent felony" (which ACCA links to "physical force") from Black's Law Dictionary: "[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon." Id. at 140-41. Similarly, in the Seventh Circuit case that the Supreme Court cited to support its definition of "physical force," id. at 140, Judge Easterbrook noted that it was "hard to describe" a "squeeze of the arm [that] causes a bruise" as "violence." Flores v. Ashcroft, 350 F.3d 666, 670 (7th Cir. 2003).

The Supreme Court also explicitly reinforced this position in a later case, distinguishing "minor uses of force" that suffice

5

for a "misdemeanor crime of domestic violence," such as squeezing an arm hard enough to leave a bruise, from the "substantial degree of force" required for violent felonies under ACCA. United States v. Castleman, 134 S. Ct. 1405, 1411-12 (2014) (internal quotation marks omitted).

The Second Circuit plainly did not share this understanding when it decided Brown and Spencer, as it relied in both cases only on the parallel language in the New York robbery statute and the federal statutes at issue. But Johnson greatly narrowed the meaning of "physical force" in ACCA, while the meaning of "physical force" in the New York robbery statute remains as broad as ever.[4] And even though the Second Circuit has favorably cited Brown and Spencer in cases subsequent to Johnson, it has done so only in "non-precedential summary orders" and decisions that "do not undertake an analysis of robbery in New York pursuant to the Supreme Court's definition of 'force' in Johnson." United States v. Johnson, 220 F. Supp. 3d 264, 271 (E.D.N.Y. 2016). Indeed, a review of the briefs in these subsequent, non-precedential cases shows that the

---

[4] In 2015, the Supreme Court returned to ACCA in another case that also bears the title Johnson v. United States, holding that the residual clause of ACCA was unconstitutionally vague because it leaves too much uncertainty about "how to estimate the risk posed by a crime" and "how much risk it takes for a crime to qualify as a violent felony." 135 S. Ct. at 2557-58.

defendants in these cases did not even make the argument based on Johnson now made by Austin.[5]

When "a subsequent decision of the Supreme Court so undermines [Second Circuit precedent] that it will almost inevitably be overruled," the District Court is bound by the Supreme Court's ruling and not by the Second Circuit's prior decisions. United States v. Emmenegger, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004).

It should also be noted that the Second Circuit, in a since-vacated opinion, did overrule Spencer and held that, after Johnson, New York robbery even in the first degree is not a crime of violence under § 4B1.2 of the Sentencing Guidelines. See Opinion, United

---

[5] In United States v. Miles, the defendant argued that his conviction was not a "felony" under ACCA because the state court invoked an alternative sentencing statute with a maximum sentence of only one year. 748 F.3d 485, 490 (2d Cir. 2014). As the Court of Appeals noted, "Miles acknowledges that robbery in the third-degree 'has as an element the use, attempted use, or threatened use of physical force,' and so has this Court." Id. In United States v. Bennett, 604 F. App'x 11, 15-16 (2d Cir. 2015) and United States v. Bogle, 522 F. App'x 15, 19-20 (2d Cir. 2013), the defendants argued that the district courts erred by relying on the certificates of disposition instead of looking to the facts underlying the conviction. In United States v. Kornegay, the defendant argued that the district court erred by not clarifying whether his prior convictions qualified under the residual or force clause of the guidelines, relying only on the 2015 Johnson decision holding the residual clause unconstitutional. 641 F. App'x 79, 85 (2d Cir. 2016). In United States v. Williams, the pro se defendant argued that his attempted assault conviction was not a violent felony after Johnson. Brief and Appendix for Appellant-Defendant at 59-62, 526 F. App'x 29 (2d Cir. 2013) (No. 12-1418), Dkt. No. 29; Reply Brief and Appendix for Appellant at 32-34, Dkt. No. 105. The Second Circuit (with no more discussion than a citation to Brown) addressed his robbery conviction sua sponte. Williams, 526 F. App'x at 37.

States v. Jones, No. 15-1518-cr (2d Cir. July 21, 2016), Dkt. No. 97. However, that decision was vacated and the case stayed pending resolution of a related Supreme Court case. United States v. Jones, 838 F.3d 296, 296 (2d Cir. 2016). After the Supreme Court decided that case, Beckles v. United States, 137 S. Ct. 886 (2017), the Second Circuit returned to Jones and held that New York first-degree robbery qualifies under U.S.S.G. § 4B1.2's residual clause (as distinct from ACCA's residual clause, which, as noted, was held void by the Supreme Court in 2015). United States v. Jones, No. 15-1518-CR, 2017 WL 4456719, at *1 (2d Cir. Oct. 5, 2017). In so doing, the Second Circuit did not address the force clause or second- or third-degree robbery.

The majority of district courts that have addressed the issue since Johnson have concluded that "forcible stealing" in New York's robbery statute does not categorially involve violent force as defined by Johnson. See Diaz v. United States, No. 1:11-cr-0381, 2016 WL 4524785, at *4 (W.D.N.Y. Aug. 30, 2016), adhered to on denial of reconsideration, 2017 WL 1855895 (W.D.N.Y. May 9, 2017); Thrower v. United States, 234 F. Supp. 3d 372, 383-85 (E.D.N.Y. 2017); Buie v. United States, No. 05-cr-664, 2017 WL 3995597, at *6-7 (S.D.N.Y. Sept. 8, 2017); United States v. Lassend, No. CR 10-40019, 2017 WL 2960518, at *14 (D. Mass. July 11, 2017); United States v. Batista, No. 5:09CR00037, 2017 WL 2841681, at *7 (W.D. Va. June 30, 2017); United States v. Moncrieffe, 167 F. Supp. 3d

8

383, 404-06 (E.D.N.Y. 2016) (under 18 U.S.C. § 16(a)); Johnson, 220 F. Supp. 3d at 270-72 (E.D.N.Y. 2016) (under U.S.S.G. § 4B1.2).[6] This Court agrees, and concludes that the Second Circuit's 1995 decision in Brown and 1992 decision in Spencer are irreconcilable with the Supreme Court's 2010 decision in Johnson and will therefore almost certainly be overruled.

Turning to the case at hand, under New York law, "[a] person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal Law § 160.05. The Court looks to rulings of the New York Court of Appeals to determine whether forcible stealing requires violent force under Johnson. The Court of Appeals has clarified that a taking by "sudden or stealthy seizure or snatching" is not sufficient, People v. Jurgins, 26 N.Y.3d 607, 614 (2015), but it has shed no light on whether force that exceeds this mere touching but is less than violent may suffice. However, numerous New York Appellate Division courts have affirmed robbery convictions involving far less than violent force. "Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is

---

[6] The courts in Laster v. United States, No. 06-cr-1064, 2016 WL 4094910(S.D.N.Y. Aug. 2, 2016) and Murray v. United States, No. 03-cr-1332, 2016 WL 5793365 (E.D.N.Y. Oct. 3, 2016) reached the same conclusion, but did so with little analysis and without opposition from the government, as they relied on the Jones decision before it was vacated.

9

convinced by other persuasive data that the highest court of the state would decide otherwise.'" DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005) (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).[7]

Several of these cases involved defendants who were convicted of robbery simply because they impeded the path of victims trying to pursue a thief. In People v. Bennett, the court found that the defendant's guilt was "proven by legally sufficient evidence that he and three others formed a human wall that blocked the victim's path as the victim attempted to pursue someone who had picked his pocket, allowing the robber to get away." 631 N.Y.S.2d 834, 834 (N.Y. App. Div. 1995). The Court also upheld the robbery conviction of Bennett's pickpocket accomplice, who "bumped his unidentified victim, took money, and fled." People v. Lee, 602 N.Y.S.2d 138, 138 (N.Y. App. Div. 1993). In People v. Patton, the court upheld a conviction of robbery where, when "the victim tried to walk after

---

[7] The government's contention that the Second Circuit's ruling in United States v. Hill, 832 F.3d 135 (2d Cir. 2016), controls this case, Gov't Mem. at 7, is not persuasive. In Hill, the Second Circuit held that Hobbs Act robbery is a crime of violence under the force clause of 18 U.S.C. § 924(c). Although Hobbs Act robbery has facially similar elements to New York robbery, the Second Circuit was not bound to look to New York cases to determine how that law is actually applied, whereas this Court is obliged to do so to determine the scope of New York second- and third-degree robbery. Indeed, looking to the decisions of New York courts affirming robbery convictions is particularly appropriate here, where those very convictions may be used in federal court if the government seeks a sentencing enhancement under ACCA.

codefendant, defendant stepped in front of him and persistently shoved him back." 585 N.Y.S.2d 431, 431 (N.Y. App. Div. 1992). This force sufficed, as the defendant "acted as a blocker, overcoming the victim's resistance to the robbery." Id.

In another set of second- and third-degree New York robbery cases, the only use of physical force was in a tug-of-war over the victim's property. In People v. Safon, the court held that "[p]roof that the store clerk grabbed the hand in which defendant was holding the money and the two tugged at each other until defendant's hand slipped out of the glove holding the money was sufficient to prove that defendant used physical force for the purpose of overcoming the victim's resistance to the taking." 560 N.Y.S.2d 552, 552 (N.Y. App. Div. 1990). In another case, the victim "resisted" when the defendant grabbed her purse, "resulting in a brief struggle" that left her shoulder "sore." People v. Rupert, 987 N.Y.S.2d 678, 680 (N.Y. App. Div. 2014); see also People v. Brown, 663 N.Y.S.2d 539, 540 (N.Y. App. Div. 1997) ("struggle" over cassette tapes); People v. Jones, 895 N.Y.S.2d 591, 593 (N.Y. App. Div. 2010) (defendant attempted to "grab the money" from the victim's hand and the victim "tripped" during "the struggle that ensued").

The Appellate Division has also upheld several other robbery convictions that involved more substantial uses of force but did not rise to the level of violent force as defined in Johnson, such

11

as pushing without even causing the victim to fall. See People v. Chatman, 833 N.Y.S.2d 794, 795 (N.Y. App. Div. 2007) ("defendant pushed [the victim] with such force that she stepped backward"); People v. Woodridge, 817 N.Y.S.2d 748, 751 (N.Y. App. Div. 2006) (defendant "physically pushed [the victim] aside"); People v. Horton, 964 N.Y.S.2d 757, 758 (N.Y. App. Div. 2013) (defendant hit security guard with her purse); People v. Green, 716 N.Y.S.2d 22, 23 (N.Y. App. Div. 2000) ("defendant pushed a security guard"); People v. Syphrett, 869 N.Y.S.2d 422, 423 (N.Y. App. Div. 2008) (defendant "bumped a store employee with such 'severe force' that she nearly landed on her manager who was walking a half step behind her").

Further still, the Appellate Division has upheld robbery convictions where the physical force used, while it did cause an injury, was analogous to squeezing someone's arm hard enough to cause a bruise. In People v. Simmons, the court held that a defendant who had "jerked [a] wallet from a lanyard around the victim's neck" had used sufficient force where the snatching had left "swelling and red, burn-like marks on the victim's neck." 818 N.Y.S.2d 859, 861 (N.Y. App. Div. 2006). The force requirement was met in another case where, when the "defendant grabbed [the victim] and demanded money, she suffered scratches on her neck." People v. Reyes, 790 N.Y.S.2d 492, 492 (N.Y. App. Div. 2005).

The government here argues that these cases actually involve the use of physical force within the meaning of ACCA. See Gov't Mem. at 8. This argument is unpersuasive. Merely standing in someone's way, see Bennett, 631 N.Y.S.2d at 834, does not involve the use of physical force capable of causing substantial physical pain or injury. And neither pulling away when someone grabs your hand, Safon, 60 N.Y.S.2d at 552, nor hitting someone with a purse, Horton, 964 N.Y.S.2d at 758, nor a shove that only causes someone to step backward, Chatman, 833 N.Y.S.2d at 795, amounts to "substantial" or "strong" physical force under Johnson and Castleman. These acts are wrong, and they are illegal. But they are not violent.

It is also important to note that several federal circuit courts, such as the Fourth and Eighth Circuits, have held that other states' robbery statutes are not "violent felonies" under ACCA because those states' courts had upheld convictions involving similarly minimal levels of force. Many of these circuit decisions, even though not en banc, overturned prior circuit precedent that would have been binding absent Johnson.

For example, in United States v. Winston, a three-judge panel held that Virginia robbery was not a violent felony under ACCA because a state intermediate court had found sufficient force where "the victim was carrying her purse 'tucked' under her arm when the defendant approached the victim from behind, 'tapped her on the

13

shoulder, and "jerked" her around by pulling her shoulder,' took her purse, and ran." 850 F.3d 677, 685 (4th Cir. 2017) (quoting Jones v. Com., 496 S.E.2d 668, 669 (Va. Ct. App. 1998)). The panel overturned a prior decision holding that robbery was a violent felony, United States v. Presley, 52 F.3d 64 (4th Cir. 1995), "because it has been undermined by later Supreme Court precedent" in Johnson. See also United States v. Gardner, 823 F.3d 793, 804 (4th Cir. 2016) (North Carolina robbery not a violent crime because intermediate court upheld a conviction "when a defendant pushed the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television") (citing State v. Eldridge, 677 S.E.2d 14 (N.C. Ct. App. June 2, 2009)).

The Eighth Circuit similarly recognized that Arkansas robbery, although it could not be committed by "mere snatching of money or goods," was not a violent felony where it had been committed by "jerking the door from [a victim], cornering [her] in the back hallway and grabbing her dress [lightly]." United States v. Eason, 829 F.3d 633, 641 (8th Cir. 2016) (alterations in original) (quoting Fairchild v. State, 600 S.W.2d 16, 16 (Ark. 1980)). The panel explicitly overturned its pre-Johnson decision to the contrary. See Eason, 829 F.3d at 641 (citing United States v. Sawyer, 588 F.3d 548 (8th Cir. 2009)). See also United States v. Bell, 840 F.3d 963, 966 (8th Cir. 2016) (Missouri robbery not

14

a violent crime where it had been committed by a defendant who "bumped" the victim's shoulder and "yanked" her purse away after only a "slight struggle").[8]

The government next contends that New York robbery is nonetheless a violent felony under ACCA because the conduct required still involves the "threatened use" of physical force. See 18 U.S.C § 924(e)(2)(B)(i) (any crime that "has as an element the . . . threatened use of physical force against another" is a violent felony under ACCA). The government notes that robbery convictions in New York require not just force, but force applied for the purpose of "[p]reventing or overcoming resistance" or "[c]ompelling" someone "to deliver up the property or to engage in other conduct which aids in the commission of the larceny." N.Y. Penal Law § 160.00. By the Government's account, even if it is possible to fulfill this requirement without actually using violent force, it is impossible to do so without impliedly threatening to use whatever force is necessary – including violent

---

[8] Various federal courts of appeal have reached the same conclusion with regard to other statutes that were violated by similarly minimal physical force. See, e.g., United States v. Lee, No. 16-6288, 2017 WL 2829372, at *4 (10th Cir. June 30, 2017) (Florida resisting arrest offense not a violent felony where it had been violated by "wiggling and struggling" and "scuffling"); United States v. Flores-Cordero, 723 F.3d 1085, 1087-88 (9th Cir. 2013), as amended on denial of reh'g (Oct. 4, 2013) (Arizona resisting arrest conviction not a violent felony where it had been violated by a defendant who instigated a "minor scuffle," kicking the arresting officers).

force - to obtain the desired property. One district court in this circuit has adopted this view, arguing that other decisions "ignore the implicit threat of physical harm that is inherent in blocking a robbery victim with a human wall." Belk v. United States, No. 01-CR-180-LTS, 2017 WL 3614446, at *6 (S.D.N.Y. Aug. 22, 2017) (emphasis in original).

ACCA does not define "threatened," so the Court imports the common meaning of the word. When describing the affirmative acts of one person "against another," as in ACCA, a "threat" means a "communicated intent to inflict harm or loss on another," or "a declaration, express or implied, of an intent to inflict loss or pain on another." Black's Law Dictionary (10th ed. 2014). See Tolan v. Cotton, 134 S. Ct. 1861, 1867 (2014) (statement from one person to another is not a threat where it "did not amount to a statement of intent to inflict harm"); United States v. White, 258 F.3d 374, 383-84 (5th Cir. 2001) (a crime did not categorically involve the "threatened use" of a deadly weapon where it could be violated without communicating such an intent); United States v. England, 507 F.3d 581, 589 (7th Cir. 2007) ("[A] 'threat' is 'an expression of intention to inflict evil, injury, or damage on another.'") (quoting Webster's Third International Dictionary 2382 (1981)).

There is, to be sure, a different sense of "threat" in which one speaks of "threats" that are not communications at all, such as the threat of rain posed by storm clouds on the horizon. See

16

Black's Law Dictionary (10th ed. 2014) (alternatively defining "threat" as "[a]n indication of an approaching menace; the suggestion of an impending detriment" and "[a] person or thing that might well cause harm"). The government argues that this is what the defendant's "threatened use of physical force against another" means under ACCA.

But other courts that have considered this issue have concluded that "threatened" as used in ACCA requires a communication, explicit or implicit, by the defendant. See United States v. Parnell, 818 F.3d 974, 980 (9th Cir. 2016) ("A willingness to use violent force is not the same as a threat to do so. The latter requires some outward expression or indication of an intention to inflict pain, harm or punishment."); United States v. King, 979 F.2d 801, 803 (10th Cir. 1992) (the "'threatened use of physical force' means both an intent to use force and a communication of that intent"). Indeed, when Congress wanted to indicate merely the risk of violence, it used, not the term "threatened," but the term "risk." Thus, the residual clause covers crimes that involve "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The presentation of a serious potential risk of harm is exactly the definition of "threaten" that the government now advances. But Congress used different, more specific phrasing for that sort of "threat," suggesting that "threaten" in the force

clause carries the distinct meaning of a communicated intent to do harm.

Therefore, to qualify as a "violent felony" under the "threatened use" prong of ACCA's force clause, the minimum outlawed conduct must involve a communicated intent to inflict physical harm on another. It is not enough, as the government argues, that the defendant's actions happen to cause the victim to know "instinctively" that if he resists, "physical force will be used against him." Gov't Mem. at 9.

As a textual matter, the communication of an intent to cause harm is entirely distinct from the "use of physical force upon another person for the purpose of [p]reventing or overcoming resistance to the taking of the property or to the retention thereof." N.Y. Penal Law § 160.00. And as a practical matter, one can use physical force to overcome resistance without communicating any violent intent. In many cases, victims and offenders likely both view the defendant's use of force as nothing more than an attempt to obtain or keep their property, not as the expression of an intent to use substantial or serious violence if the victim resists. For example, the Second Circuit interpreted Safon to hold that "[i]n and of itself, the act of pulling away can represent the force necessary to sustain [a] third-degree robbery conviction." Read v. New York State, No. 98-2799, 1999 WL 980952 at *2 (2d Cir. 1999). If a thief is caught attempting a

18

stealthy snatching and "tugs" when the victim grabs his hand, a reasonable victim would interpret "the act of pulling away" as an attempt to escape with the purloined goods, not as a threat of violence. And the longer the tugging lasts without escalation, the less it could be interpreted as a threat. Similarly, yanking a wallet off a lanyard around someone's neck, see Simmons, 818 N.Y.S.2d at 860, is simply using the force necessary to obtain the property. It does not communicate a threat of substantial violence, particularly if the defendant were to immediately sprint away.

Furthermore, if a threat is to qualify as a violent felony under ACCA, it cannot have been made negligently. Though ACCA does not contain a mens rea requirement, the Supreme Court has held that "used" in 18 U.S.C. § 16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct" because "it is much less natural to say that a person actively employs physical force against another person by accident." Leocal v. Ashcroft, 543 U.S. 1, 9 (2004). It would be strange for a negligent threat of violence to suffice under ACCA where the negligent use of that same violence, which would be a more culpable act, is insufficient.

The Supreme Court's reasoning in Elonis v. United States, 135 S. Ct. 2001 (2015) supports this conclusion. In Elonis, the Court rejected a negligence standard for the interstate transmission of

communications containing threats to injure other people under 18

U.S.C. § 875.

> Such a "reasonable person" standard is a
> familiar feature of civil liability in tort
> law, but is inconsistent with the conventional
> requirement for criminal conduct — awareness
> of some wrongdoing. Having liability turn on
> whether a "reasonable person" regards the
> communication as a threat — regardless of what
> the defendant thinks — reduces culpability on
> the all-important element of the crime to
> negligence, and we have long been reluctant to
> infer that a negligence standard was intended
> in criminal statutes.

Id. at 2011 (emphasis in original, internal citations and quotation

marks omitted). This logic applies equally to ACCA. See United

States v. McNeal, 818 F.3d 141, 155-56 (4th Cir. 2016) ("[T]o

qualify as a crime of violence, an offense must require either

specific intent or knowledge with respect to the use, threatened

use, or attempted use of physical force.").

Even if a reasonable victim were to infer that a defendant's

intentional obstruction of their pursuit of a thief, as occurred

in Bennett, was an implied threat of violence, the obstructing

defendants may well have neither the intent to communicate that

threat nor any idea that they are doing so. The minimum conduct

necessary to violate New York's robbery statute therefore does not

involve the intentional or knowing "threatened use" of violence.

Because "forcible stealing" in New York does not require "the

use, attempted use, or threatened use of physical force against

20

another," Austin's third-degree robbery conviction should not have served as a predicate offense at his sentencing. Because Austin had only two other convictions that the Court believed to be violent felonies, he should not have been subject to ACCA's 15-year minimum sentence.

Judge Netburn also recommends finding that New York second-degree robbery, which accounts for Austin's other two predicate convictions, is not categorically a violent felony under ACCA. Although defendant's motion would have to be granted even if that were not so, the Court deems it appropriate to address the issue.

In New York, a person is guilty of robbery in the second-degree when he forcibly steals property and when:

> 1. He is aided by another person actually present; or
>
> 2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
>> (a) Causes physical injury to any person who is not a participant in the crime; or
>>
>> (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
>
> 3. The property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law.

N.Y. Penal Law § 160.10.

Where a prior conviction is under a "divisible statute" - that is, one that "sets out one or more elements of the offense in

the alternative" - courts apply a "modified categorical approach."
Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). This
approach allows the court to "consult a limited class of
documents," known as "Shepard documents," "to determine which
alternative formed the basis of the defendant's prior conviction,"
and then requires the court to apply the categorical approach to
the elements of the specific alternative under which the defendant
was convicted. Id.; see also Shepard v. United States, 544 U.S.
13, 26 (2005). Where the government fails to produce Shepard
documents, a court determines whether the "least of [the] acts"
described in the statute can serve as a predicate offense. Johnson,
559 U.S. at 137.

Here, the government does not contest that the facts
underlying Austin's convictions are not available in a Shepherd
document, so the Court looks to the minimum conduct necessary for
a conviction. Before Judge Netburn, Austin identified § 160.10(1),
the crime of "forcibly steal[ing] property" while "aided by another
person actually present," as the least of the acts in the statute,
and the Court agrees. As explained above, forcible stealing does
not require the use of violent force on behalf of the principal
and the statute does not require that the other person use even
physical, much less violent, force; they need only provide aid and
be actually present. See Shabazz v. United States, No. 3:16-cv-
1083, 2017 WL 27394, at *15 (D. Conn. Jan. 3, 2017) ("Committing

22

a robbery with the aid of another says nothing about the level of force that must be used."). Second-degree robbery in New York can therefore be committed even where no "physical force," as defined in Johnson, is used, attempted, or threatened.[9] Thus, once again, Austin's motion must be granted.

In addition to its objections, the government moved in the alternative for the Court to stay this case pending the outcome of various appeals to the Second Circuit. As explained above, the outcome of those appeals is, in the Court's view, so likely to be in favor of Austin's approach as to be virtually inevitable. Meanwhile, Austin has been imprisoned longer than § 922(g)'s statutory maximum of 10 years, and every day he remains is a new injustice. The Court will not delay his release any further.

Because none of his three prior convictions were violent felonies under ACCA, Austin's motion to vacate his prior sentence is GRANTED. The Bureau of Prisons is directed to release him from custody forthwith.

---

[9] The government addresses an argument that was not raised in the Report and Recommendation and about which the Court now expresses no opinion. Section 160.10(1) permits conviction of a defendant who never actually used, attempted to use, or threatened to use violent force, or intended for his accomplices to do so. See, e.g., People v. Pagan, 641 N.Y.S.2d 641, 642 (N.Y. App. Div. 1996). If crimes can only enhance a sentence under ACCA if the defendant individually intended for someone to use, attempt to use, or threaten to use violent force, then second-degree robbery would not categorically qualify even if "forcible stealing" were a violent felony after Johnson.

23

SO ORDERED.

Dated:    New York, NY
         December 4, 2017

                                     JED S. RAKOFF, U.S.D.J.