USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/24/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOEL AUSTIN,

    Petitioner.

    -v-

UNITED STATES OF AMERICA,

    Respondent.
------------------------------------x

16-cv-4446 &
06-cr-991 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

    The Government moves to remand Joel Austin to the custody of the Bureau of Prisons pending adjudication of the merits of his petition under 28 U.S.C. § 2255. Dkt. 49 (Jan. 29, 2020). Despite the Court's sympathy for Mr. Austin's current situation, the Court is obliged to grant the Government's motion.

    Mr. Austin has been at liberty since this Court granted his § 2255 petition in 2017. Opinion and Order, Dkt. 42 (Dec. 4, 2017). At that point, Mr. Austin had served eleven years of a fifteen-year sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In its 2017 opinion, this Court concluded that three state crimes for which Mr. Austin was convicted in the 1980s and 1990s were not "violent felonies" for the purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), thus rendering Mr. Austin subject to a maximum prison sentence of ten years, rather than a

1

mandatory minimum sentence of fifteen years. Compare 18 U.S.C. § 924(a)(2) with 18 U.S.C. § 924(e)(1). The Government appealed this decision, however, and in January 2020, the Second Circuit vacated this Court's 2017 opinion and remanded Mr. Austin's case for further proceedings in light of United States v. Thrower, 914 F.3d 770 (2d Cir. 2019), which held that certain New York state robbery offenses are ACCA "violent felonies." Order of United States Court of Appeals, Dkt. 48 (Jan. 9, 2020).

During his two years of release, Mr. Austin has successfully reintegrated into society. He has secured temporary employment and is applying for full-time jobs. He has obtained housing, and he helps to care for his elderly mother. He is, in the words of his counsel, a "clear reentry success." Nevertheless, the Government's position is that it must seek Mr. Austin's remand so that he may begin serving the roughly four years that remain on his sentence.

The Court has no option but to grant the Government's motion. First, the Court adheres to its earlier conclusion that the inevitable effect of the Second Circuit's order is to reinstate Mr. Austin's original, fifteen-year sentence. Mr. Austin's motion for the Court to reconsider this holding, Dkt. 52 (Feb. 13, 2020), is accordingly denied.

To be sure, defense counsel is correct that the posture of this case is unusual. Here, the Second Circuit vacated and

remanded this Court's earlier judgment, while also expressly denying the Government's motion for summary reversal, and without including any language in its order that directs this Court to reinstate Mr. Austin's original sentence. By far the more common scenario is for the appellate court either to reverse the district court or to vacate and remand with clear instructions to reinstate the original sentence. See e.g., United States v. Diaz, 768 Fed. App'x 57, 58 (2d Cir. 2019) ("[W]e REVERSE the district court's grant of Diaz's § 2255 motion, VACATE the amended judgment, and REMAND for the district court to reinstate Diaz's original sentence."); Brown v. United States, 752 Fed. App'x 108, 109 (2d Cir. 2019) ("We therefore REVERSE the District Court's grant of Brown's § 2255 motion, VACATE the amended judgment, and REMAND . . . for the District Court to reinstate Brown's original sentence."); United States v. Rutigliano, 887 F.3d 98, 111 (2d Cir. 2018) ("[W]e VACATE the district court's November 1, 2016 order . . . , and we REMAND with directions to reinstate the original judgments . . . ."). Moreover, the Government cites no on-point authority for the proposition that vacatur of a judgment granting a § 2255 petition automatically reinstates the earlier sentence even without any language in the appellate court's order to that effect. The Government relies on the dictum in United States v. Maldonado, 996 F.2d 598, 599 (2d Cir. 1993) that "when a

3

sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced," but this language is taken entirely out of its context.[1]

Nevertheless, basic legal principles compel the conclusion that the Second Circuit's order vacating this Court's 2017 opinion must have reinstated Mr. Austin's original sentence. Because "[a] vacated judgment has no effect," Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 110 (2d Cir. 2001), the only logical reading of the Second Circuit's order is that it places Mr. Austin in the same position as he would be if this Court had never issued its 2017 opinion, i.e., subject to his original, fifteen-year sentence.

28 U.S.C. § 2106, which grants the courts of appeals broad discretion in crafting a remedy, is not to the contrary. Although the Second Circuit could no doubt have remanded this case with express instructions not to reinstate the original judgment pending a re-adjudication on the merits, it did not do so. For this Court to read the order as though it had would impermissibly contravene the appeals court's mandate. See United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) ("The mandate

---

[1] Maldonado addressed the question of whether a defendant has a right of allocution in a resentencing following the vacatur of an earlier sentence by the court of appeals. But this case is inapposite to a situation where, as here, the higher court never vacated the earlier sentence.

4

rule 'compels compliance on remand with the dictates of the superior court . . . .'") (quoting United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)). And neither does the fact that the Second Circuit denied the Government's motion for summary reversal — indeed, after spending much of the oral argument discussing the distinction between summary reversal and vacatur and remand — allow this Court to delay reinstating Mr. Austin's original judgment. The Second Circuit's decision to vacate and remand simply allows this Court a second look at the merits of Mr. Austin's petition, whereas a summary reversal would not have done so. The distinction between these two remedies has nothing to do, however, with the question of whether Mr. Austin's original judgment continues to apply in the meantime. It undoubtedly does.

The question therefore arises of whether the Court may grant Mr. Austin bail, which would allow his continued release while the Court considers the merits of his claim. But as this Court has previously written, the standard for granting bail to a § 2255 petitioner "is a difficult one to meet," and is even higher than the standard for bail pending direct appeal. United States v. Whitman, 153 F. Supp. 3d 658, 660 (S.D.N.Y. 2015) (quoting Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001)). Specifically, to obtain bail in these circumstances, a defendant must meet a two-prong test, showing, first, that the habeas

petition "raises substantial claims" and, second, that "extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." Mapp, 241 F.3d at 226 (alterations omitted).

Mr. Austin clearly meets the second prong. His lengthy period of release and his commendable success at rebuilding his life over the last two years present an extraordinary circumstance. Further, the Court fears that, even if Mr. Austin's § 2255 motion ultimately succeeds, reincarcerating him in the meantime may threaten his job and his housing, thereby reducing the effectiveness of the habeas remedy.

The defendant founders, however, on the first prong. To raise a "substantial claim," a defendant must show "a demonstrated likelihood that the petition will prevail, based upon claims of a substantial nature upon which the petitioner has a high probability of success . . . so that victory for petitioner can be predicted with confidence." Whitman, 153 F. Supp. 3d at 660 (quoting United States v. Yarmoluk, No. 96-cr-863 (JSR), 1997 WL 642564, at *1 (S.D.N.Y. Oct. 17, 1997)). Mr. Austin's § 2255 petition raises claims that seem, at first impression, to be colorable, and nothing in this order precludes defense counsel from making any argument in her forthcoming merits brief. But the Court is not nearly so confident in Mr. Austin's ultimate success that it is willing to grant him bail.

6

Mr. Austin's original ground for habeas relief, that his prior convictions were not for ACCA violent felonies, appears foreclosed by Thrower (though again, defense counsel is invited to respond). Austin's claim for relief under Rehaif v. United States, 139 S. Ct. 2191 (2019), appears somewhat more viable, and his plea allocution admits of some ambiguity on this issue. See, e.g., Transcript, Dkt. 17, at 14:21-15:4 (May 3, 2007). But even aside from the procedural objections that the Government has raised, the Court is initially skeptical that Mr. Austin did not know that "he belonged to the relevant category of persons barred from possessing a firearm," 139 S. Ct. at 2200, given that the defendant was sentenced to 18 to 36 months' imprisonment for his 1997 attempted robbery conviction. Moreover, defense counsel's earlier argument that the indictment's failure to allege the Rehaif knowledge element deprives this Court of subject matter jurisdiction over Mr. Austin's prosecution has since been rejected by the Second Circuit. United States v. Balde, 943 F.3d 73, 90-91 (2d Cir. 2019).[2] The Court therefore cannot avoid the conclusion that,

---

[2] Mr. Austin also argues that there are no Shepard documents establishing that his two 1987 convictions were for different crimes. But the defendant appears to have conceded this point in his plea allocution, see Transcript, Dkt. 17, at 14:7-11. Nevertheless, the Court will again await further briefing on this issue.

7

while far from frivolous, Mr. Austin's habeas petition is not so likely to succeed as to warrant a grant of bail.

For the foregoing reasons, the Government's motion to remand Mr. Austin is granted, and the defendant is directed to voluntarily surrender to the custody of the Bureau of Prisons by no later than 2 PM on April 30, 2020.

SO ORDERED.

Dated:
New York, NY
February 21, 2020

JED S. RAKOFF, U.S.D.J.