```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :
                                    :   06-cr-991 (JSR)
          -v-                       :
                                    :   OPINION AND ORDER
JOEL AUSTIN                         :
                                    :
     Defendant.                     :
                                    :
------------------------------------x
```

Now before the Court is the motion of defendant Joel Austin for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

This is a somewhat unusual motion. To begin with, although Austin is seeking "release," he is currently at liberty. However, he faces an imminent deadline of June 30, 2020 by which he must surrender to federal custody to complete the remaining service of his fifteen-year sentence for being a felon in possession of a firearm.

By way of background, Austin pled guilty to that charge before this Court in May 2007. In August of that year, the Court sentenced him to 180 months' incarceration, finding that he was subject to the fifteen-year mandatory minimum of 18 U.S.C. § 924(e)(1) because, at the time of his conviction for the instant offense, he had three prior state robbery convictions, all of which constituted "violent felonies" for the purposes of that statute. See Judgment, ECF No 19 (Aug. 21, 2007).

1

In 2016, Austin, who had by then served a substantial portion of his sentence, filed a petition under 28 U.S.C. § 2255, arguing that his prior convictions did not constitute "violent felonies," and that, accordingly, he should have been subject to a maximum sentence of ten years of incarceration, rather than a minimum of fifteen. See 18 U.S.C. § 924(a)(2). In December 2017, after Austin had served approximately eleven years of his fifteen-year sentence, this Court agreed and released him from custody. Opinion and Order, ECF No. 42 (Dec. 5, 2017).

The Government chose to appeal this ruling, however, and in January 2020, the U.S. Court of Appeals for the Second Circuit vacated this Court's earlier decision and remanded the matter for further consideration in light of United States v. Thrower, 914 F.3d 770 (2d Cir. 2019). See Order of U.S. Court of Appeals, ECF No. 48 (Jan. 9, 2020). At the urging of the Government, this Court determined in post-remand proceedings that "the inevitable effect of the Second Circuit's order is to reinstate Mr. Austin's original, fifteen-year sentence." Memorandum Order at 2, ECF No. 53 (Feb. 24, 2020). The Court accordingly set a June 30 surrender date. Memorandum Order at 3, ECF No. 65 (Apr. 7, 2020).

Over the two-and-a-half years during which he has been at liberty, Austin has proven himself to be totally rehabilitated.

Indeed, despite the handicap of being a convicted felon who spent over a decade in prison, Austin has done a remarkable job of rebuilding his life. He has helped to take care of his elderly mother and is maintaining a relationship with his three adult children. He has obtained his own apartment through an affordable housing program. He was gainfully employed in a regular job before the pandemic and is now eager to return to work. He has fully complied with the terms of his supervised release. Both sides agree that he is no threat to the community.

For this and other reasons, Austin believes that he should not have to return to prison at all. The Court agrees and accordingly grants his motion.

The compassionate release statute, as modified by the First Step Act, provides that, after certain administrative exhaustion requirements are met,[1] and after considering the § 3553(a) factors, "the court . . . may reduce the term of imprisonment . . . if it finds that — extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

---

[1] On May 13, 2020, Austin filed a request for compassionate release with the warden of FCI Allenwood, where he was incarcerated prior to his 2017 release. The warden has not responded to his request, and the thirty-day waiting period has long since run.

Notably absent from this statute is any express requirement that a defendant be in the custody of the Bureau of Prisons ("BOP") at the time he petitions for compassionate release. Indeed, the relief available under the statute — a reduction in sentence, and not, specifically, release from custody — implies that the only absolute requirement is that a defendant be subject to a federal sentence. See 18 U.S.C. § 3582(c) (providing that "[t]he court may not modify a term of imprisonment once it has been imposed except" in specified situations). Austin, as noted above, is currently subject to his original, fifteen-year sentence.

It is true that two other district courts in this Circuit that have recently confronted this issue have held that relief under § 3582(c) is usually inappropriate for defendants who are not in BOP custody. United States v. Spruill, 18-cr-22 (VLB), 2020 WL 2113621, at *3 (D. Conn. May 4, 2020); United States v. Konny, 19-cr-283 (JGK), 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020). They derive this conclusion primarily from the fact that the statute provides that a defendant seeking compassionate release must, before coming to court, first bring his motion to "the warden of [his] facility," and that the Bureau of Prisons must then rule on it before it can be brought to court unless a period of 30 days has transpired. Taken together, these provisions indicate a role for the BOP in evaluating such

4

motions, one which is theoretically undermined by allowing a defendant not in custody to petition for this form of relief.

But Austin's situation is distinguishable from those of the defendants in Spruill and Konny. At the time they brought their motions, the defendants in both of those cases had been sentenced by their respective courts but had not yet surrendered to federal custody.[2] But Austin, unlike either of those defendants, spent roughly a decade in BOP custody at FCI Allenwood, serving the majority of his sentence, before this Court released him 2017. Further, on May 13 of this year, as noted, Austin duly filed with the Allenwood warden his compassionate release motion; yet the Bureau of Prisons, in response, did not deny that motion on the ground that Austin had not yet re-surrendered, or on any other ground, but simply failed to act.

For these reasons, Austin's situation more closely resembles that of a defendant in a halfway house or in a medical facility than that of a defendant who has not yet begun serving his sentence. Courts in this district and elsewhere have found that a defendant residing in a halfway house after a period of

---

[2] Spruill, moreover, involved a situation where a defendant was making duplicative, meritless requests for an adjournment of his surrender date, even after an earlier adjournment had been granted and after the defendant had been arrested for a state crime while released on voluntary surrender. 2020 WL 2113621, at *1.

5

incarceration is eligible to petition for compassionate release. See, e.g., United States v. Damian Campagna, 16-cr-78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020); United States v. Angelo Victor Rodriguez, 17-cr-21 (WHO), ECF No. 95 (N.D. Cal. Jan. 23, 2020). Moreover, this Court, with the consent of the Government, recently granted compassionate release to a defendant who was hospitalized after falling ill in prison, but who was not physically in prison at the time he brought his motion. United States v. Robert DeBello, 15-cr-491 (JSR), ECF No. 819 (Apr. 20, 2020).[3]

Moreover, incarceration is not a distant or hypothetical possibility for Austin. But for the Court's decision today, he would have to surrender to BOP custody in about a week. The Court therefore considers him to be, de facto, in the same position as a defendant already in custody. To hold otherwise — that is, to find Austin ineligible to bring the instant motion today, but eligible next week, though only after suffering the severe and irreversible disruption that a return to prison would cause — would be a hypertechnical and inequitable result, more akin to a seventeenth-century battle of writs than to the

---

[3] Another court recently granted compassionate release to a defendant in the custody of the United States Marshals Service at a private facility, thus further undermining the proposition that a defendant must be in BOP custody at the time he makes such a motion. United States v. Daniel Hernandez, 18-cr-834 (PAE), 2020 WL 1684062, at *1 (S.D.N.Y. Apr. 2, 2020).

6

mandate of modern law to render substantial justice. Accordingly, in the narrow and exceptional situation presented here, the Court deems Austin eligible to petition for compassionate release, even though he is, for the moment, at liberty.

The Court therefore proceeds to the merits. In doing so, the Court finds that extraordinary and compelling reasons warrant a reduction in Austin's sentence and that such a reduction is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Although the circumstances here are not those specifically singled out in the policy statement of the U.S. Sentencing Commission published in U.S.S.G. § 1B1.13 Application Note 1, a reduction in Austin's sentence is nonetheless consistent with the applicable policy statement's overall goal, which is all the statute requires. Moreover, courts are not, in any case, bound by this Guidelines provision and may grant compassionate release "on grounds that are distinct from, but of similar magnitude and importance to, those specifically enumerated in Application Note 1." United States v. Pinto-Thomaz, No. 18-cr-579 (JSR), 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020).

On the merits, Austin's demonstrated rehabilitation is an important factor that counsels in favor of compassionate release. To be sure, the Court may not grant compassionate

release on this ground <u>alone</u>, 28 U.S.C § 994(t); <u>see also</u> U.S.S.G. § 1B1.13 Application Note 3. But rehabilitation is at least one factor that the Court may consider under 18 U.S.C. § 3553(a)(2)(A)-(C), and here it is clear that further incarceration of this defendant could serve no conceivable purpose. Since his release in 2017, Austin has lived the life of a productive citizen, securing employment, obtaining an apartment, and involving himself with his family. He is in no need of specific deterrence, and it is evident that the other purposes of his original sentence (such as general deterrence) have been fully achieved by his substantial period of imprisonment.

But beyond his demonstrated rehabilitation, Austin's situation itself also constitutes an extraordinary circumstance that counsels in favor of release. Austin has been out of prison for more than two-and-a-half years and, during that time, has lived his life as a free man. Returning him to custody could only undermine this progress. Most immediately, even a short period of incarceration would likely cause Austin to lose his affordable-housing apartment, an irrational outcome totally at odds with the purposes that the criminal law seeks to serve.

In at least one other case, the Second Circuit has cited an "oppressive delay" in the execution of a sentence as a reason not to impose further incarceration. <u>United States v. Ray</u>, 578

8

F.3d 184, 199 (2d Cir. 2009) (quoting United States v. Lovasco, 431 U.S. 783, 789 (1977)). There, for "unknown reasons," the district court waited fifteen years before re-imposing sentence after a defendant successfully appealed her initial sentence. Id. at 189. On a further appeal, the Second Circuit held that it violated the Due Process Clause of the Fifth Amendment to impose a custodial sentence after a fifteen-year delay, during which time the defendant had moved on with her life. Id. at 187, 203. The facts here are not as egregious as they were in Ray, but the legal bar is correspondingly lower. Austin need not show a Due Process violation; he must merely show that the facts of his situation constitute an extraordinary and compelling reason to resentence him to time served, which, the Court finds, they unquestionably do.

Finally, the ongoing coronavirus pandemic is another factor that weighs in favor of release. Austin is not without some risk factors, as he is 52, has a history of hypertension, and is considered mildly obese. Concededly, however, he is not among those who are at the highest risk of complications from the virus. Moreover, assuming that Austin were again designated to FCI Allenwood, he would return to a facility that has done an excellent job of protecting its population against the virus, so far avoiding even a single reported case among its inmates (although this may have also been affected by the low rate of

9

testing). Accordingly, had Austin brought his motion on this ground alone, the Court would have been inclined to deny it. See United States v. Haney, No. 19-cr-541 (JSR), 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020). But in light of the factors above — the total irrationality of subjecting this defendant to an additional period of incarceration and the likelihood that such incarceration would undermine and perhaps irreversibly set back his rehabilitation — even the reduced risk that this defendant would face from COVID-19 inside a prison facility where, because of crowded and unsanitary conditions, the virus can sometimes flourish, adds to the combined elements warranting release.

For the foregoing reasons, Austin's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is granted. His June 30 surrender deadline is therefore revoked, and he is resentenced to time served.[4]

SO ORDERED

Dated:   New York, NY
         June 22, 2020

_____
United States District Judge

---

[4] Austin's § 2255 petition remains pending before this Court on remand from the Second Circuit, ECF No. 30 (June 13, 2016), and the parties have submitted new briefing. The Court's decision on the instant motion does not completely resolve the issues presented there, because Austin has a short period of supervised release left to serve. Nevertheless, the Court will deem that motion, for all practical purposes, to be moot, unless defense counsel notifies the Court that she wishes to renew it.