```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA,            :
                                     :        06-cr-991 (JSR)
      v.                             :
                                     :        MEMORANDUM ORDER
JOEL AUSTIN,                         :
            Defendant.               :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

The United States Probation Office ("Probation") has petitioned this Court to revoke defendant Joel Austin's term of supervised release and impose a new term of imprisonment. Probation alleges that Austin sold narcotics on August 1, 2020 and possessed narcotics with an intent to sell them on August 7, 2020, in violation of state law (and, thus, in violation of the terms of his supervised release).

After Probation filed its petition, and while the Government was conducting its investigation and preparing for an evidentiary hearing in this matter, the Government sought to access Probation records relating to conversations between a probation officer and Austin. The defense objected that the statements were elicited in violation of Austin's Fifth and Sixth Amendment rights. The Court ordered expedited briefing and then denied the Government's application in a bottom-line order, ECF No. 78, on September 30,

2020. This Memorandum confirms that order and explains the reasons for the ruling.[1]

## BACKGROUND

On August 7, 2020, an officer of the New York City Police Department ("NYPD") arrested Austin, alleging that the officer had previously observed Austin selling narcotics on August 1, 2020. The officer avers that during a search incident to the arrest, on August 7, he found 11 vials of cocaine in Austin's pocket.

Austin asserts, and the Government does not dispute, that he chose not to speak to police officers following his arrest on August 7. On August 8, Austin was arraigned in New York County on a criminal complaint, assigned a public defender, and released on his own recognizance.

The conditions of Austin's supervised release previously imposed by the Court include the standard condition that Austin "notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer." Judgment, ECF No. 19, at 3, No. 11. To that end, Austin sent a text message

---

[1] The bottom-line order was expedited because the Court held an evidentiary hearing on October 2, 2020 on the alleged violations of supervised release. The parties are in the process of preparing written summations, and the Court does not now make any findings of fact or conclusions of law on the underlying specifications. The parties are also in the process of briefing Austin's motion arguing that he has a constitutional right to a trial by jury and proof beyond a reasonable doubt on the underlying specifications. The Court will hear telephonic oral argument on this motion on October 23, 2020.

notifying Probation of his August 7 arrest on August 9, the day after he was released from state custody. The probation officer instructed Austin to call him. See Probation Office, Petition for Violation of Supervised Release, at 2.

Another standard condition of supervised release is that Austin must "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer," Judgment, ECF No. 19, at 3, No. 3. In response to the foregoing instruction, Austin called the officer and "briefly explained the circumstances of his arrest." Id. The probation officer "directed [Austin] to report to the Probation Office . . . to further discuss the arrest," and Austin reported as directed on August 11. Id. The officer "once again inquired about the nature of the arrest," id., and Austin answered the officer's questions. The officer took notes and prepared reports regarding Austin's responses.

The Government applied to this Court for an order under the All Writs Act, 28 U.S.C. § 1651, directing Probation to turn over these notes and reports for potential use in the Government's case-in-chief, or, in the alternative, for use on rebuttal to impeach any inconsistent statement made by the defendant if he were to testify.[2] The defense objected that Austin's statements to Probation were obtained in violation of his Fifth and Sixth

---

[2] At the subsequent hearing on the underlying specifications, however, Austin chose not to testify.

Amendment rights, thus precipitating the motion practice that led to this Court's order of September 30.

## LEGAL BACKGROUND

Austin's objections raise three questions that, as far as the Court and the parties are aware, have not been addressed in this Circuit. First, when the probation officer directed Austin to describe the circumstances of his arrest, even though Austin had already invoked his right to silence before the NYPD arresting officers, did the Probation Office's instructions violate Austin's Fifth Amendment right to silence? Second, given that Austin had already been arraigned in state court and assigned counsel, did Probation's interrogation of Austin in the absence of his counsel violate the Sixth Amendment right to assistance of counsel? Finally, if the answer to either question is yes, what is the appropriate remedy? The Court answers each of these questions in turn.

I. The Fifth Amendment Right Against Self-Incrimination

   A. *Legal Standard*

The Fifth Amendment provides that a person may not "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This protection encompasses not only a defendant's right to refuse to testify at trial but also a suspect's right "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where

-4-

the answers might incriminate him in future criminal proceedings." Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)). But the Fifth Amendment does not bar all Government interrogation designed to elicit self-incriminating statements. The Constitution prohibits only use of statements that are "compelled."

How does a court determine whether a statement was compelled? The Supreme Court's caselaw shows that the answer to this question depends on the context in which the statement was given. In general, when the Government questions a suspect, it is incumbent upon the suspect to invoke his Fifth Amendment right to silence. This does not require lawyerly precision, "talismanic phrases[,] or any special combination of words." See United States v. Ramirez, 79 F.3d 298, 304 (2d Cir. 1996). Depending on the circumstances, simply "refusing to answer questions" may suffice to invoke one's right to silence. Id.

The Supreme Court has recognized exceptions to the general rule that a suspect must invoke his right to silence. In some situations, a suspect cannot be said to have a genuine choice regarding whether to respond to governmental queries; under these circumstances, the onus shifts to the Government. It must inform the defendant of his right to silence and obtain his knowing and voluntary waiver of that right; otherwise, the privilege against

self-incrimination is said to be self-executing and the use of the suspect's statements in the prosecution's case-in-chief is barred.

The first example of a situation in which the privilege is self-executing is custodial interrogation, which imposes "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda v. Arizona, 384 U.S. 436, 477 (1966). Therefore, as every American with a television now knows, when a defendant is detained, he must be informed of his rights to silence and counsel and must knowingly and voluntarily waive them prior to custodial interrogation.

Another example of a situation in which the privilege is self-executing is a "penalty" situation, in which the speaker was pressured to speak because a penalty would have been imposed if she had asserted the privilege. See Garrity v. New Jersey, 385 U.S. 493 (1967) (defendant threatened with loss of employment if he did not respond); see also United States v. Ramos, 685 F.3d 120, 127 (2d Cir. 2012) ("Where the government compels an individual to speak by threatening him with a substantial penalty for exercising his Fifth Amendment right to remain silent, the privilege is self-executing.").

In Minnesota v. Murphy, 465 U.S. 420 (1984), the Supreme Court was asked to apply these principles to probation. A probationer had been directed to attend an interview and to respond to a

-6-

probation officer's questions, and the probationer argued that his right to silence was self-executing. On the facts of Murphy, the Court rejected that argument. It reasoned that Murphy was like a witness "who is required to appear and give testimony" at trial or in a grand jury. Id. at 437. Like such a witness, Murphy might have felt pressure not to invoke his right against self-incrimination, but, like such a witness, it was nonetheless incumbent upon Murphy to invoke his right to silence.

The Court limited its holding, however, by noting that if the probation officer had led Murphy to believe that his probation would have been revoked if he refused to answer, then that "would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." Id. at 425. But in the circumstances of that case, the Court found that the probation officer interrogating Murphy did not, "either expressly or by implication, assert[] that invocation of the privilege would lead to revocation of probation," id. at 425, or any other "impermissible penalty," id. at 437. The Court noted that this was true "[w]hether [it] employ[ed] a subjective or an objective test." Id. As to Murphy's subjective beliefs, the Court found that "[t]here is no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." Id. As to an objective view, the Court held

-7-

that if Murphy "did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, that belief would not have been reasonable. Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." Id. at 438.[3]

   B.  *Discussion*

All parties agree that Austin was subject to noncustodial questioning by Probation. As already noted, the Supreme Court and the Second Circuit have recognized that a noncustodial probation interview, unlike a custodial police interrogation, is not so coercive that the right against self-incrimination is always self-executing. And in circumstances like this case, where there is no evidence that the probation officer led Austin to believe that his supervised release would be revoked if he refused to answer questions, these courts have held that there is no "penalty"

---

[3] The Supreme Court raised another potential limitation to its holding in Murphy, noting that "[t]he result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution." Id. at 435. This potential limitation has since been modified by the Second Circuit, as follows: "So long as the probationer has not been told that he would lose his freedom if he invoked his Fifth Amendment privilege, a statement is not deemed compelled merely because the probation officer has the authority to compel the probationer's attendance and truthful answers, or because the probation officer consciously sought incriminating evidence." United States v. Jennings, 652 F.3d 290, 304 (2d Cir. 2011) (citations, internal quotation marks, and brackets omitted).

in this situation that would make the privilege self-executing. The supervisee is "free to claim the privilege" against self-incrimination and refuse to answer questions, even if doing so appears to violate the terms of supervised release. Jennings, 652 F.3d at 304. The Supreme Court has claimed that this point of constitutional law is so obvious that believing otherwise "would not [be] reasonable." Murphy, 465 U.S. at 438; see id. at 437 ("At this point in our history virtually every schoolboy is familiar with the concept, if not the language, of the [Fifth Amendment].") (internal quotation marks omitted) (alteration in original).

Further, Austin does not argue that he invoked his right to silence during the interview with Probation. But he does contend that he did so in his state custody of a few days earlier. ECF No. 75, at 1-2. ("After his arrest, Mr. Austin declined to speak with the arresting officers, thus invoking his right to remain silent under the Fifth Amendment."). The Government does not explicitly concede this point, but it also does not contest it. See ECF No. 76, at 2. (referencing Austin's "decision to invoke his Miranda rights when questioned by officers in the state case"). Therefore, the Court concludes (for present purposes only) that Austin invoked his right to silence before the NYPD.

The question thus presented is whether Austin's invocation of the right to silence before the NYPD officers was binding upon

Probation. The Government's sole argument for why it was not binding is that Austin was not in custody and thus had "no federal right to have an attorney present at the meeting" with Probation. ECF No. 76, at 2 (quoting Murphy, 465 U.S. at 424 n.3). This is true, but it is beside the point as far as Austin's Fifth Amendment claim is concerned. Rather, the Government argument is essentially unresponsive to Austin's argument that his invocation of his right to silence was still in force.

The Court notes that the Government might have raised several arguments as to why Austin's invocation was not binding upon Probation, including that sufficient time had passed from when he invoked his privilege with the NYPD,[4] that the Probation

---

[4] Though this Court does not reach the issue, it notes that whether enough time had passed for the coercive pressure inherent in Austin's NYPD detention to dissipate -- thus permitting government agents to again approach him regarding these offenses, even though he had previously invoked his right to silence -- is a close question. Compare Michigan v. Mosley, 423 U.S. 96, 104 (1975) (no constitutional violation where, upon invocation of right to silence, questioning was immediately terminated and only resumed on a different topic after two-hour delay and fresh Miranda warnings) with Maryland v. Shatzer, 559 U.S. 98, 110 (2010) (finding, where defendant invoked right to counsel and was subsequently released from custody, that a new approach was not permissible until after 14 days, which "provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody"). On the one hand, though Austin spoke with Probation the day after his release, that conversation was only by phone, a far less coercive form of communication. By the time he spoke with Probation in person, he had been at liberty for three days. On the other hand, Probation's questioning covered the same alleged offense conduct as to which Austin invoked his

interrogation was conducted by a different sovereign,[5] and that the Probation interrogation was initiated by Austin when he notified Probation of his arrest.[6] The Court does not reach these issues. Instead, because the Government did not raise these arguments, the Court finds that it has waived them.

For these reasons, the Court finds that Austin's invocation of his right to silence remained in force when he was interviewed by Probation, so his statements to Probation were unconstitutionally obtained.

---

right to silence; moreover, in addition to whatever residual coercive pressure remained following his detention in state custody, the interviews were not without coercive pressures of their own, especially given the Standard Condition requiring Murphy to obey the officer and answer his questions.

[5] Although this Court does not reach the issue, the Supreme Court has reasoned that when a defendant invokes the right to counsel, the prohibition upon further interrogation applies even "when it is conducted by a different law enforcement authority." Shatzer, 559 U.S. at 111; see Minnick v. Mississippi, 498 U.S. 146, 148-149 (1990) (defendant's invocation of right to counsel in FBI interview barred state law enforcement's interrogation of him without counsel two days later). Probation, however, is an arm of the Judiciary, not the Executive, and arguably is therefore not a law enforcement authority.

[6] While this Court does not reach the issue, the Supreme Court has recognized that suspects, having invoked their Fifth Amendment rights, will sometimes waive them by voluntarily reinitiating contact with police -- but only if they were not compelled to make contact. See, e.g., Minnick, 498 U.S. at 156 (explaining that courts can "find[] a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with the authorities," but finding no such waiver where Minnick "was compelled to attend" the interview).

## II. The Sixth Amendment Right to Assistance of Counsel

The Court's Fifth Amendment holding rests upon a finding that Austin invoked his right to silence, but the Court recognizes the paucity of evidence and legal authority on the issue. The Court further recognizes that the Government, for whatever reason, chose not to raise many arguments that might have defeated Austin's Fifth Amendment claim. Therefore, the Court chooses not to rest its holding on the Fifth Amendment alone. It now turns to Austin's Sixth Amendment argument.

### A. Legal Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right encompasses "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." Kansas v. Ventris, 556 U.S. 586, 590 (2009). The right also "extends to having counsel present at various pretrial 'critical' interactions between the defendant and the State, including the deliberate elicitation by law enforcement officers (and their agents) of statements pertaining to the charge." Id. (citation omitted). Therefore, it violates "the basic protections of [the Assistance of Counsel] guarantee [to] use[] against [a defendant] at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he

-12-

had been indicted and in the absence of his counsel." Massiah v. United States, 377 U.S. 201, 206 (1964).

   B.   Discussion

Neither the parties nor the Court has identified controlling authority regarding whether a Probation interview regarding already pending state charges violates a defendant's Sixth Amendment right to the assistance of counsel.

This inquiry is not controlled by Murphy and its progeny because, after arraignment, the defendant's right to assistance of counsel is self-executing and need not be invoked. See Michigan, 494 U.S. at 348 ("[O]nce formal criminal proceedings begin," the Sixth Amendment prohibits "deliberately eliciting" statements regarding the charged offense "from a defendant without an express waiver of the right to counsel.") The Government offers no argument that the probation officer obtained "an express waiver of the right to counsel." Thus, when the officer interrogated Austin regarding already pending state charges, without counsel present, and without notification to Austin's state counsel, that violated his Sixth Amendment right to the assistance of counsel in the state court proceedings.

The Government argues that a Probation interview is a special circumstance where there is no right to counsel, citing two Second Circuit opinions. See United States v. Rea 678 F.2d 382, 390 (2d Cir. 1982) ("[The defendant] has no right to have a lawyer present

-13-

during an interview with his probation officer."); United States v. Conte, 99 F.3d 60, 65 (2d Cir. 1996) (same). But these opinions addressed whether the defendant had a right to the assistance of counsel in connection with a potential revocation-of-supervised-release hearing. Here, by contrast, Austin faces criminal charges in state court. Whatever his rights in the revocation proceeding when Probation interviewed him, Austin unquestionably had a Sixth Amendment right to the assistance of counsel in connection with the adversary criminal proceedings that had already begun in state court. Therefore, these Second Circuit opinions do not control.

The Government's citation to these cases seems to suggest that it believes there should be a dual sovereignty exception to the Sixth Amendment. It offers no authority for that position, and the Court finds it uncompelling. The Sixth Amendment guarantees "the Assistance of Counsel" "[i]n all criminal prosecutions," and the fundamental protections of the Bill of Rights bind the States and the Federal Government alike. When a defendant faces criminal charges, whether state or federal, if any government-related actor infringes the defendant's right to assistance of counsel, this violates the Sixth Amendment. Cf. Minnick, 498 U.S. at 148-149 (defendant's invocation of right to counsel in FBI interview barred state law enforcement's interrogation of him without counsel two days later); Shatzer, 559 U.S. at 111 (further interrogation following invocation of right

to counsel impermissible even "when it is conducted by a different law enforcement authority").

Accordingly, the Court concludes that, independent of the Fifth Amendment violation, Probation violated Austin's Sixth Amendment right to counsel when, without ever notifying his court-appointed state counsel, Probation interviewed Austin about the state charges.

### III. Remedy

#### A. Legal Standard

When the Government violates the Fifth and/or Sixth Amendment by unconstitutionally eliciting statements from a suspect, courts must fashion an appropriate remedy. The Supreme Court has explained that a "truly coerced" statement may not be introduced into evidence by the Government under any circumstances, because this would violate the "Fifth Amendment guarantee[] that no person shall be compelled to give evidence against himself." Kansas v. Ventris, 556 U.S. 586, 590 (2009). By contrast, in some circumstances where the Government violates a suspect's Fifth and/or Sixth Amendment rights in a manner short of true coercion, the statements may be admitted for impeachment purposes only, if the trustworthiness of the evidence satisfies legal standards. Harris v. New York, 401 U.S. 222, 224 (1971).

Regarding the Sixth Amendment, the Supreme Court has held that "the constitutional violation occurs when the uncounseled

-15-

interrogation is conducted," and the use of a tainted statement at trial is not itself a new constitutional violation. Id. at 592. Therefore, analogizing to the Fourth Amendment exclusionary rule, the Supreme Court has balanced the interests in deterring constitutional violations against the interests in protecting the integrity of the truth-finding process. The Supreme Court concluded that, when the Government seeks to offer the evidence for impeachment purposes only, "[t]he interests safeguarded by . . . exclusion are outweighed by the need to prevent perjury and to assure the integrity of the trial process." Id. at 593. Thus, evidence that was not "truly coerced" but was obtained in violation of a suspect's Sixth Amendment right to the assistance of counsel may be admitted into evidence for impeachment purposes only. See also Harris, 401 U.S. at 224-226 (same result when petitioner made incriminating statement in custodial interrogation without Miranda warnings). This Court assumes, without deciding, that the same analysis applies when the Government did not "truly coerce[]" a statement but did elicit it unconstitutionally following a prior invocation of the suspect's Fifth Amendment right to silence.

    B.    Discussion

Because the Court concludes that Austin's statements to Probation were obtained in violation of the Fifth and Sixth Amendments, those statements (and the probation officers' notes and/or reports containing the same) may not be used in the

-16-

Government's case-in-chief. The Government argues that it should nevertheless be provided with access to these statements so that it can use them on rebuttal. The Government has a point. Austin has not argued that his statements were "truly coerced." Therefore, were these notes already in the Government's possession, under Ventris and Harris, they would likely be admissible for impeachment purposes only.

However, the question before the Court is not one of admissibility but one of discretion. The Government seeks an order under the All Writs Act directing Probation to turn over evidence to the Government. In determining whether to issue an order under the All Writs Act, this Court has wide latitude. Because the Court concludes that the evidence was obtained in violation of Austin's constitutional rights, the Court declines to compound that violation by permitting these notes to be turned over to the Government.

In Ventris and Harris, weighing perjury against condoning tainted evidence, the Supreme Court chose what is saw as the lesser evil. But here, the constitutional calculus is different. Probation is not a litigant or an advocate; it is an arm of the Judicial Branch. Were this Court to condone -- indeed, order -- the use of evidence unconstitutionally obtained by an officer who reports to this Court, that would call into question the integrity of the judicial process more acutely than merely permitting the

-17-

Government to introduce tainted evidence already in its possession. This the Court declines to do.

IV. <u>Recommendation to Probation</u>

Because, as noted, Probation is an arm of the Judicial Branch, the Court makes one additional recommendation.[7] The Supreme Court has made clear that "the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." <u>Murphy</u>, 465 U.S. at 438. Thus, for instance, when this Court ordered Austin to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer," ECF No. 19, at 3, No. 3, that command contained an implicit carveout for his exercise of his Fifth Amendment rights, if he so chose.

Similarly, the United States Sentencing Commission, discussing the Standard Conditions of supervised release, has explained that although one of the Standard Conditions "requires the defendant to 'answer truthfully' the questions asked by the probation officer, a defendant's legitimate invocation of the Fifth Amendment privilege against self-incrimination in response to a probation officer's question shall not be considered a

---

[7] The Court also wants to make clear that, although it finds that a probation officer violated Austin's constitutional rights, the Court also finds, based on all available evidence, that the officer acted in good faith. These are novel, nuanced questions of constitutional law.

violation of this condition." United States Sentencing Guidelines § 5D1.3, Application Note 1 (2018). The Supreme Court has opined that reasonable supervisees are already aware of this principle.[8] In the interest of transparency, the Court believes that the better course would be not to presume such knowledge but rather to clearly incorporate supervisees' constitutional rights within the Standard Conditions. To that end, the Court recommends that the underlined text be added to what is now Standard Condition number 4: "You must answer truthfully the questions asked by your probation officer, <u>except that you may, if you choose, refuse to answer questions that would reveal incriminating information about you, and if you have been criminally charged, you have a right to have an attorney present when you answer questions about those charges</u>."

\* \* \*

For the foregoing reasons, as the Court stated in its bottom-line order of September 30, 2020, the Government's application is denied.

SO ORDERED.

Dated:   New York, NY
        October 20, 2020

                                    JED S. RAKOFF, U.S.D.J.

---

[8] <u>Murphy</u>, 465 U.S. at 438 ("[A] belief that his probation might be revoked for exercising the Fifth Amendment privilege . . . would not have been reasonable.").