

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 23, 2020

**By ECF**
Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     ***United States v. Joel Austin*, 06 Cr. 991 (JSR)**

Dear Judge Rakoff:

The Government respectfully submits this written summation following defendant Joel Austin's revocation of supervised release hearing on October 2, 2020 (the "Hearing"). At the hearing, the Government proved by a preponderance of the evidence that the defendant committed the New York State crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree and, as a result, violated the terms of his supervised release.

I.    **Background**

A. **Procedural Background**

On May 3, 2007, the defendant pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). On August 16, 2007, the Court sentenced the defendant to a term of imprisonment of 15 years and a term of supervised release of 3 years. On December 5, 2017, the defendant began his term of supervision, after the Court granted his motion under 28 U.S.C. § 2255.

On August 7, 2020, the defendant was arrested by New York City Police Department ("NYPD") Officer Randys Ramos Luna based on his observation of the defendant selling a vial containing cocaine to another person on August 1, 2020. In a search incident to the arrest on August 7, Officer Ramos Luna seized 11 plastic vials containing cocaine from the defendant's pocket. On August 8, 2020, a felony complaint was filed in New York state criminal court charging the defendant with one count of Criminal Possession of a Controlled Substance in the Third Degree and one count of Criminal Sale of a Controlled Substance in the Third Degree.

On September 28, 2020, the Probation Office filed an Amended Violation Report, which charged the defendant with the following two violations: (i) on or about August 1, 2020, the defendant committed Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.39(01) ("Specification One"), and (ii) on or about August 7, 2020, the

defendant committed Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(01) ("Specification Two").

On October 2, 2020, the Court held the Hearing to determine whether the defendant was guilty of Specifications One and Two. At the Hearing, the Government called Officer Ramos Luna and Reginald Donaldson, an investigative analyst at the United States Attorney's Office for the Southern District of New York, who testified as an expert about the cell site analysis he performed. The defendant called NYPD Sergeant Louis Meade, who was present on the day Officer Ramos Luna observed the defendant sell narcotics and on the day the defendant was arrested.

### B. The August 1, 2020 Sale of a Controlled Substance

At approximately 1:25 AM on August 1, 2020, Officer Ramos Luna, who has observed over 30 narcotics transactions, was parked in a police car, along with Sergeant Meade, on St. Nicholas Avenue and West 124th Street in Manhattan. Tr.[1] 5-9, 30. While parked in the police car, Officer Ramos Luna observed a black male—who was later identified as the defendant—walk down West 124th Street and approach a group of people. *Id.* 9. Although it was nighttime, Officer Ramos Luna had a clear view of the location because there was scaffolding on the sidewalk with electric lights. *Id.* 8, 35-36. Officer Ramos Luna also had a "clear view" of the defendant's face. *Id.* 9. After the defendant approached the group of people, Officer Ramos Luna observed the defendant give a small plastic vial to individuals in the group, who gave the defendant money in return. *Id.* 9-11. After the defendant received the money, Officer Ramos Luna observed the defendant walk away from the group of individuals, who also began to disperse. *Id.* 10-11. Sergeant Meade testified that he did not see the hand-to-hand transaction, though he did see a black male on West 124th Street. *Id.* 111, 114.

Because Officer Ramos Luna believed that he had just observed a hand-to-hand narcotics transaction, he and Sergeant Meade exited the police vehicle and approached two females from the group who had not yet left the location. Tr. 11, 38. Only approximately 40 to 50 seconds elapsed between the transaction and when Officer Ramos Luna approached the two females. *Id.* 11. Officer Ramos Luna and Sergeant Meade approached the two females, and not the defendant, because (i) Officer Ramos Luna was confident that one of the females was in possession of narcotics based on his observation of the hand-to-hand narcotics sale, (ii) the females had not left the scene, (iii) the defendant had left the scene, and (iv) Officer Ramos Luna did not have enough police personnel to approach both the females and the defendant. *Id.* 11-12, 42. Because Officer Ramos Luna had a clear view of the defendant's face, he also believed the defendant could be identified on a later date. *Id.* 42.

---

[1]   "Tr." refers to the transcript of the violation hearing before this Court on October 2, 2020. "GX" refers to the Government's Hearing Exhibits.

One of the females that Officer Ramos Luna approached was named Rhina Rosario. *Id.* 12. An analysis of records from the defendant's cellphone (the "Austin Cellphone")[2] revealed that Ms. Rosario and the defendant had telephone contact 5 times the day before, including just several hours before the narcotics sale.[3] Tr. 95; GX 211. When Officer Ramos Luna approached her, he asked her to give him the plastic vial that she had just been given by the defendant. Tr. 12; GX 301T at 2-3. Ms. Rosario eventually gave Officer Ramos Luna the vial that she had been holding in her right hand. Tr. 12-13; GX 103, 106. During the encounter, Ms. Rosario stated that she is "not the one who sells it" and that Officer Ramos Luna should "put in jail the one who sells it." GX 301T at 6. She further asked not to be taken away merely because she was "buying something." *Id.* Ms. Rosario also asked Officer Ramos Luna why he did not "take away all the ones that he sold to" because "[h]e sold to many people there." *Id.* at 13. Officer Ramos Luna believed the male that Ms. Rosario was referring to was the seller, who was later identified as the defendant. Tr. 18. Officer Ramos Luna arrested Ms. Rosario that morning. *Id.* 13.

A NYPD laboratory examiner analyzed the contents of the red plastic vial that was seized from Ms. Rosario. The examiner determined that the vial contained cocaine and had a net weight of 0.163 grams. GX 104.

Mr. Donaldson conducted an analysis of cellsite data obtained from the service provider for the defendant's cellphone pursuant to a judicially authorized warrant and concluded that the Austin Cellphone was in the vicinity of 283 St. Nicholas Avenue[4] between 1:00 AM and 2:00 AM on August 1, 2020, and was in other parts of New York at other times. Tr. 91-92, 98; GX 207. 283 St. Nicholas Avenue is approximately 1.65 miles away from the defendant's home address.[5] Tr. 98; GX 210.

### C.  The August 7, 2020 Possession of a Controlled Substance

At approximately 11:00 PM on August 7, 2020, Officer Ramos Luna was conducting surveillance around 283 St. Nicholas Avenue, and observed the defendant in the area. Tr. 21-22. Officer Ramos Luna recognized the defendant as the same black male who sold narcotics on August 1, 2020 based on his physical description and face. *Id.* 22. As a result, Officer Ramos Luna approached the defendant to conduct an arrest. *Id.* 22-23. After Officer Ramos Luna placed the defendant under arrest, Officer Ramos Luna searched the defendant and found, among other things, cash in the defendant's hand and 11 purple plastic vials in his right pocket. *Id.* 23; GX 101. The plastic vials were the same size and shape as the vial seized from Ms. Rosario on August 1,

---

[2]   Following his arrest on August 7, 2020, the defendant told Officer Ramos Luna that the Austin Cellphone was his cellphone number. Tr. 27. T-Mobile records of the Austin Cellphone also indicate that the defendant is the subscriber on the Austin Cellphone. Tr. 88.

[3]   Ms. Rosario provided this number to Officer Ramos Luna following her arrest on August 1, 2020. Tr. 21.

[4]   283 St. Nicholas Avenue is between West 124th and 125th streets. Tr. 6.

[5]   The defendant provided his home address to Officer Ramos Luna following his arrest on August 7, 2020. Tr. 27.

2020. Tr. 23. The only difference was the color. *Id.* After the defendant was placed in handcuffs, Officer Ramos Luna brought the defendant to a police vehicle, where he was searched one more time. *Id.* 24. During that search, additional cash was seized from the defendant. *Id.* In total, $403 in mostly small bills were seized from the defendant. *Id.* 25.

A NYPD laboratory examiner analyzed a composite sample of the substance inside the 11 plastic vials and determined that it contained cocaine and that the substance in the 11 plastic vials had a net weight of 1.168 grams. GX 104.

On August 11, 2020, the defendant was tested for the presence of controlled substances, including cocaine, and tested negative. GX 105. The defendant was previously tested for the presence of controlled substances, including cocaine, 17 times between January 2018 and May 2019 and tested negative each time. *Id.*

## II.   Argument

For the reasons set out below, the Government established by a preponderance of the evidence that the defendant violated the terms of his supervised release.

### A.   The Defendant Committed the State Crime of Criminal Sale of a Controlled Substance on August 1, 2020

#### 1.   Applicable Law

Specification One alleges that the defendant committed a state crime, Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.39(01). To prove Specification One, the Government must prove, by a preponderance of the evidence, that the defendant knowingly and unlawfully sold a controlled substance. N.Y.P.L. § 220.39(01). New York state courts have often found this crime proven beyond a reasonable doubt based on an arresting officer's testimony that he observed a defendant engage in a narcotics transaction with a buyer, who was subsequently arrested with narcotics. For example, in *People v. Parker*, the court affirmed a conviction of a defendant who sold a plastic bag containing cocaine to a buyer who took hold of, but quickly discarded, the bag upon arrival of the arresting officer. 731 N.Y.S.2d 17, 17 (App. Div. 2001); *People v. Starks*, 629 N.Y.S.2d 749, 750 (App. Div. 1995) (same); *see also, e.g.*, *People v. Albert*, 12 N.Y.S.3d 462, 462-63 (App. Div. 2015) (affirming a conviction for criminal sale of a controlled substance based on testimony of police officers who saw the defendant engage in a hand-to-hand narcotics transaction with a buyer, who was subsequently arrested with crack cocaine); *People v. Montcrieft*, 745 N.Y.S.2d 602, 603 (App. Div. 2002) (affirming a conviction for criminal sale of a controlled substance based on testimony of a police officer who observed the defendant hand a plastic baggie containing cocaine to an individual, who was later apprehended with the cocaine).

#### 2.   Discussion

The Government proved by a preponderance of the evidence that, on August 1, 2020, the defendant knowingly and unlawfully sold a vial containing cocaine to Ms. Rosario. The testimony

of Officer Ramos Luna satisfies each element of Specification One, and his testimony is powerfully corroborated by, among other items, (i) statements made by Ms. Rosario which were recorded on Officer Ramos Luna's body camera, and (ii) Mr. Donaldson's cellsite analysis and analysis of telephone records from the Austin Cellphone.

Officer Ramos Luna testified that he saw the defendant sell a plastic vial, later determined to contain cocaine, to Ms. Rosario. Specifically, he testified that, on August 1, 2020, he was parked in a car directly across the street from the drug transaction, on St. Nicholas Avenue and West 124th Street, and observed the defendant approach a group of people, hand them plastic vials, receive money in return, and walk away. Tr. 6-11. The sidewalk was well lit, and Officer Ramos Luna had a "clear view" of the defendant's face. *Id.* 8, 35-36. Officer Ramos Luna, who has personally observed over 30 narcotics sales, immediately recognized that the defendant was engaged in a hand-to-hand sale of drugs. *Id.* 5, 11. While the defendant quickly left the scene after the sale had concluded, one of the buyers—Rhina Rosario—stayed behind. *Id.* 10-12. Officer Ramos Luna approached Ms. Rosario, and, after some back and forth, Ms. Rosario gave the officers the vial containing cocaine that the defendant had sold to her. *Id.* 12; GX 104.

On August 7, 2020, Officer Ramos Luna learned that the black male he had seen engage in the narcotics transaction on August 1, 2020 was the defendant. Officer Ramos Luna testified that, while conducting surveillance in the vicinity of 283 St. Nicholas Avenue, he observed the defendant and arrested him based on his prior conduct on August 1. Tr. 22-23. Officer Ramos Luna explained that he recognized the defendant based on his face and physical characteristics. *Id.* 22.

Officer Ramos Luna's body worn camera footage, which depicts statements made by Ms. Rosario, corroborates Officer Ramos Luna's testimony about the drug transaction that he observed. When Officer Ramos Luna approached Ms. Rosario, he asked her to give him the "thing that was given to you, that the man gave you." GX 301T at 3. In response, she gave Officer Ramos Luna the red plastic vial containing cocaine. GX 106. In addition, during this encounter, Ms. Rosario asked Officer Ramos Luna several times why she was being arrested for purchasing narcotics, while the male seller was not arrested. For example, she asked Officer Ramos Luna, "Why are you taking me away? Listen, because I'm buying something? . . . . You're going to take me away because I'm buying something." GX 301T at 6. Ms. Rosario further explained, "I'm not the one who sells it." *Id.* She also asked, "Why didn't you take away all the ones that he sold to" because "[h]e sold to many people there. It wasn't only to me." *Id.* at 13. Together, these statements confirm Officer Ramos Luna's testimony that he observed the defendant sell narcotics to several individuals, including Ms. Rosario, on August 1.

Mr. Donaldson's expert testimony powerfully corroborates Officer Ramos Luna's testimony that it was the defendant—and not someone else—who sold the vial containing cocaine to Ms. Rosario. Mr. Donaldson performed cellsite analysis and concluded that, (i) the Austin Cellphone was in the vicinity of 283 St. Nicholas Avenue between 1:00 AM and 2:00 AM on August 1, 2020, and (ii) the Austin Cellphone was in other parts of New York at other times. Tr. 91-92, 98; GX 207. As Mr. Donaldson also explained, 283 St. Nicholas Avenue is approximately 1.65 miles from the defendant's home. Tr. 98; GX 210. Thus, the Austin Cellphone was located at the scene of the drug deal at around the exact time that Officer Ramos Luna observed the drug sale.

Officer Ramos Luna's testimony is further corroborated by the fact that Ms. Rosario and the defendant apparently knew each other, as they had telephone contact approximately 5 times the day before the narcotics transaction, including several hours before the sale. Tr. 95; GX 211.

Based on this evidence, the Government has easily satisfied its burden of proving by a preponderance of the evidence that the defendant sold a controlled substance on August 1, 2020.

**B. The Defendant Committed the State Crime of Criminal Possession of a Controlled Substance on August 7, 2020**

**1. Applicable Law**

Specification Two alleges that on August 7, 2020, the defendant committed a state crime, Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(01). To prove Specification Two, the Government must prove, by a preponderance of the evidence, that the defendant: (i) knowingly and unlawfully possessed a controlled substance, (ii) with the intent to sell the controlled substance. N.Y.P.L. § 220.16(01).

A defendant's intent to sell can be inferred from many factors, including the amount and packaging of drugs, the presence of cash on the defendant, and a combination of both. For example, in *People v. Daley*, the court held that a defendant's intent to sell could be inferred from the defendant's "possession of 32 separate packets of cocaine, especially when coupled with his possession of $941 in cash." 721 N.Y.S.2d 873, 873 (App. Div. 2001) (citation omitted); *see also, e.g.*, *People v. Bligen*, 826 N.Y.S.2d 30, 30 (App. Div. 2006) (finding the recovery of $187 from the defendant to be relevant to the intent-to-sell element); *People v. Kelly*, 689 N.Y.S.2d 470, 472 (App. Div. 1999) (finding "ample evidence of intent to sell" based on "the number and packaging of" the 34 vials of crack cocaine found on the defendant); *People v. Wager*, 679 N.Y.S.2d 578, 578 (App. Div. 1998) (finding intent to sell based on the fact that the defendant possessed 20 glassines of heroin); *People v. Rivera*, 576 N.Y.S.2d 364, 364 (App. Div. 1991) ("[e]vidence of money found on the defendant's person at the time of his arrest was probative of this intent" to sell). Courts have often found that the presence of a large amount of individually packaged drugs is "indicative of drug selling as opposed to drug use." *People v. Beverly*, 592 N.Y.S.2d 375, 375 (App. Div. 1993); *see also People v. Hicks*, 754 N.Y.S.2d 648, 649 (App. Div. 2003) (affirming the admission of testimony that the 14 glassine envelopes containing heroin that were recovered from the defendant were "not consistent with personal use").

**2. Discussion**

The Government proved by a preponderance of the evidence that, on August 7, 2020, the defendant possessed the 11 vials containing cocaine with an intent to sell the cocaine. Once again, Officer Ramos Luna's testimony, which is corroborated by other evidence, demonstrates that the defendant possessed a substance containing cocaine with the intent to sell it.

There is no dispute the defendant knowingly and unlawfully possessed a substance containing cocaine. Officer Ramos Luna testified that, in a search incident to the defendant's arrest

on August 7, 2020, Officer Ramos Luna seized from the defendant's right pocket 11 purple plastic vials.[6]  Tr. 23.  A NYPD lab examiner concluded that the plastic vials contained cocaine.  GX 104.

In addition, the packaging and number of the vials seized, along with the circumstances surrounding the defendant's arrest, demonstrate that the defendant possessed cocaine with an intent to sell it.  To begin, the vials were the same shape and size as the plastic vial that Officer Ramos Luna seized from Ms. Rosario after Officer Ramos Luna observed the defendant sell the plastic vial to Ms. Rosario.  Tr. 23.  Moreover, the number of plastic vials—here, 11—is "indicative of drug selling as opposed to drug use."  *Beverly*, 592 N.Y.S.2d at 375; *see also Hicks*, 754 N.Y.S.2d at 649 (14 glassine envelopes not consistent with personal use).  This is especially true where, as here, the defendant has not once tested positive for the presence of controlled substances, including cocaine, in the 18 times he was tested by the Probation Office between 2018 and August 11, 2020.  GX 105.  Finally, Officer Ramos Luna's testimony that he and another officer seized $403 dollars from the defendant at the time of his arrest, Tr. 23-25, further shows that the defendant possessed the cocaine with an intent to sell it, *see, e.g.*, *Daley*, 721 N.Y.S.2d at 873.  Officer Ramos Luna testified that he seized some of this money from the defendant's hand and that the cash contained mostly small bills, including 88 bills of $1, 15 bills of $5, five bills of $10, and seven bills of $20.  Tr. 23, 25.  The defendant likely possessed these small bills and some of the money in his hand so that he could easily engage in a narcotics sale without needing draw attention to himself by going into his wallet or looking for change to complete the transaction.

Based on the above, the Government has easily satisfied its burden of proving by a preponderance of the evidence that the defendant possessed a controlled substance with the intent to sell it on August 7, 2020.

## III.   Conclusion

For the foregoing reasons, the Government respectfully submits that it has proven by a preponderance of the evidence that the defendant committed the violations of supervised release charged in Specifications One and Two, and requests that the Court find that the defendant committed those violations.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York

by:  /s/ Rebecca T. Dell
Rebecca T. Dell / Nicholas Chiuchiolo
Assistant United States Attorneys
(212) 637-2198 / -1247

cc:    Sylvie Levine, Esq. (ECF)

---

[6]   Even if the defendant were to argue that the arrest was unlawful, the Second Circuit has held that "the exclusionary rule does not apply in revocation of federal supervised release proceedings." *United States v. Hightower*, 950 F.3d 33, 38 (2d. Cir. 2020).