```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA,            :
                                     :      06-cr-991 (JSR)
         v.                          :
                                     :      OPINION & ORDER
JOEL AUSTIN,                         :
              Defendant.             :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

The United States Probation Office ("Probation") has petitioned this Court to revoke defendant Joel Austin's term of supervised release and impose a new term of imprisonment, alleging two violations of the conditions upon which Austin was released: first, that Austin sold narcotics on August 1, 2020; and second, that he possessed narcotics with an intent to sell them on August 7, 2020. Austin denies the allegations and moves for trial by jury. Austin argues that this Court cannot constitutionally revoke his term of supervised release and sentence him to a further term of imprisonment under 18 U.S.C. § 3583(e) & (g) unless a jury first finds that he committed the alleged violations. He relies upon Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, including Alleyne v. United States, 570 U.S. 99 (2013), and United States v. Haymond, 139 S. Ct. 2369 (2019).

### Legal Standard

The right not to be criminally punished except upon a jury verdict finding proof of guilt beyond a reasonable doubt is a

hallowed and precious right that goes back at least to the time of the Magna Carta, which provided that "[n]o free man shall be taken or imprisoned or outlawed, or exiled, or in any way ruined, nor will we go against or send against him, except by the lawful judgment of his peers, or by the law of the land." Magna Carta ch. 39 (1215). No group was more aware of these rights than the Founding Fathers, who had protested their erosion at the hands of the British colonial judges. In the words of Justice Story, "trial by jury in criminal cases . . . was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties, and watched with an unceasing jealousy and solicitude." 3 J. STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1773 (1833). The early Americans "brought this great privilege with them, as their birth-right and inheritance, as a part of that admirable common law, which had fenced round, and interposed barriers on every side against the approaches of arbitrary power." Id. In particular, trial by jury offered "security against the prejudices of judges, who may partake of the wishes and opinions of the government, and against the passions of the multitude, who may demand their victim with a clamorous precipitancy." Id. § 1774.

This guarantee was enshrined in the Sixth Amendment, which provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of

the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.[1] And in the centuries since, the Supreme Court has continuously recognized that defendants' jury trial rights must "be jealously preserved." Patton v. United States, 281 U.S. 276, 312-13 (1930), abrogated on other grounds by Williams v. Fla., 399 U.S. 78 (1970). For example,

> the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

Id.

More recently, the Supreme Court's seminal case on this topic was its decision in Apprendi, in which the Court considered a law permitting longer sentences if a trial judge found, based upon a preponderance of the evidence, that a convicted defendant had

---

[1] It is also well-established that the Constitution requires that a jury cannot convict a defendant unless it finds proof of guilt beyond a reasonable doubt. Alleyne v. United States, 570 U.S. 99, 104 (2013) (The Sixth Amendment jury trial right, "in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt."); In re Winship, 397 U.S. 358, 361-364 (1970) (describing the "vital role in the American scheme of criminal procedure" played by the reasonable-doubt standard).

committed a hate crime. The Supreme Court found this procedure unconstitutional. It held that, apart from the fact of a prior conviction (where, of course, a right to jury is present during that prior proceeding), "any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury and proved beyond a reasonable doubt" or admitted through a guilty plea after a defendant has knowingly waived the right to such a trial. Apprendi, 530 U.S. at 495. In 2004, the Court recognized that the same principle applied to judicial factfinding that permitted an "exceptional" sentence beyond the "standard" range prescribed by statute. Blakely v. Washington, 542 U.S. 296, 303 (2004). And in 2013, the Court recognized that the reasoning "applies with equal force to facts increasing the mandatory minimum." Alleyne, 570 U.S. at 111-112. It is now beyond cavil that, regardless of the particular context in which a sentence is imposed, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." Blakely, 542 U.S. at 304 (internal quotation marks and citation omitted).

To be sure, a judge's sentence below what the jury has authorized can be conditioned on adherence to specified requirements. Thus, while judges have long been empowered to sentence a convicted defendant to probation rather than prison, 18

U.S.C. § 3561 (1982 ed.), probationers (and parolees) have to abide by conditions of release.  If they violate them, they can be sent, or sent back, to prison for up to the maximum sentence originally authorized by the statute of conviction.  See Morrissey v. Brewer, 408 U.S. 471, 478 (1972).  As the Supreme Court explained in 1972, "[t]he enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." Id. at 478-79 (emphasis added).

Congress substantially modified the federal sentencing system with the Sentencing Reform Act of 1984.  The use of parole was largely phased out, and instead Congress permitted courts to sentence convicted defendants to terms of "supervised release" following imprisonment.  But none of this could alter the foregoing constitutional principles embodied in the Fifth and Sixth Amendments.

Last year, a plurality of the Supreme Court recognized as much in Haymond v. United States, 139 S. Ct. 2369 (2019), where the Court held unconstitutional the last two sentences of 18 U.S.C. § 3583(k), which provide that "[i]f a defendant required to register under [a particular statute] commits any [of several] criminal offense[s] . . . , the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment . . . not less than 5 years."  Writing for the four-

justice plurality, Justice Gorsuch explained that "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." Haymond, 139 S. Ct. at 2373 (plurality).

> Based on the facts reflected in the jury's verdict, Mr. Haymond faced a lawful prison term of between zero and 10 years . . . . But then a judge--acting without a jury and based only on a preponderance of the evidence--found that Mr. Haymond had engaged in additional conduct in violation of the terms of his supervised release. Under § 3583(k), that judicial factfinding triggered a new punishment in the form of a prison term of at least five years and up to life.

Id. at 2378. The plurality analogized to Alleyne v. United States, 570 U.S. 99 (2013), explaining that in both cases, a judge found facts that "increased the legally prescribed range of allowable sentences," and concluding that in both cases this was "in violation of the Fifth and Sixth Amendments." Id. (internal quotation marks omitted). The Court thus found the statutory provision unconstitutional.

The plurality also expressly rejected the Government's argument that post-conviction supervised release revocation proceedings were somehow different from ordinary sentencings for constitutional purposes. The plurality explained that "any increase in a defendant's authorized punishment contingent on the finding of a fact requires a jury and proof beyond a reasonable doubt no matter what the government chooses to call the exercise." Id. at 2379 (internal quotation marks and citation omitted).

Justice Breyer concurred in the judgment, providing the fifth

-6-

vote to strike down the last two sentences of § 3583(k). He cautioned in dictum that he "agree[d] with much of the dissent, in particular that the role of the judge in a supervised-release proceeding is consistent with traditional parole." Haymond, 139 S. Ct. at 2385 (Breyer, J., concurring in the judgment). However, he nevertheless found § 3583(k) unconstitutional, reasoning that it was unlike ordinary supervised release and more like punishment for a new crime, for three reasons:

> First, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. Second, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. Third, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "commit[ted] any" listed "criminal offense."

Id. at 2386.

To be sure, the Supreme Court did not reach either § 3583(e) or § 3583(g), the supervised release provisions at issue in the case now before this Court, but the plurality recognized that Apprendi and its progeny could be read to "raise Sixth Amendment issues in a small set of cases" under § 3583(e)--specifically, cases where "combining a defendant's initial and post-revocation sentences issued under § 3583(e) will . . . yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of

-7-

conviction." Id. at 2384 (plurality).

Nevertheless, the divided decisions in Haymond leave somewhat uncertain how the instant matter should be resolved. However, the Second Circuit has considered the implications of Haymond in one published opinion, United States v. Doka, 955 F.3d 290 (2d Cir. Apr. 8, 2020). Doka appealed, coincidentally, from this judge's decision to revoke Doka's term of supervised release and impose a new term of imprisonment, a judgment imposed prior to Haymond. The new term of imprisonment did not exceed the maximum sentence permitted by the underlying conviction. Following Haymond, however, Doka argued for the first time on appeal that he nonetheless had a right to trial by jury and proof beyond a reasonable doubt. The Second Circuit disagreed, concluding as follows:

(1) The Supreme Court's decision in United States v. Haymond holding that a different supervised release provision, 18 U.S.C. § 3583(k), is unconstitutional, did not undermine our well-settled precedent acknowledging that the Constitution permits a sentencing judge to find facts under a preponderance-of-the-evidence standard in revocation proceedings as authorized by 18 U.S.C. § 3583(e)(3).

(2) Haymond's holding is limited to § 3583(k) and does not extend to § 3583(e)(3).

(3) Under the controlling rule in Haymond set forth in Justice Breyer's opinion concurring in the judgment, § 3583(e)(3) does not present any of the three factors that, in combination, render § 3583(k) unconstitutional. Specifically, § 3583(e)(3) does not apply to a discrete set of

-8-

> offenses; eliminate the sentencing judge's discretion in revocation proceedings; or impose a mandatory minimum term of imprisonment for the violation of a condition of supervised release.
>
> (4) In sum, § 3583(e)(3) remains constitutional under our well-settled Circuit precedent, and the District Court's revocation of Doka's term of supervised release based on its findings by a preponderance of the evidence did not violate Doka's rights under the Fifth and Sixth Amendments.

Id. at 298-99.

## Analysis

Against this background, the Court turns to the issue at hand. The immediate questions are: does Doka control this case, and, if so, to what extent?

Austin argues that Doka does not control this case for two reasons. First, he notes that the only alleged violations of supervised release here are violations of state law, and "[i]n connection with each of those [state court] proceedings, Mr. Austin would have had attendant statutory and constitutional rights." Reply Br., ECF No. 86, at 4. Thus, he argues, to deny him trial by jury and proof beyond a reasonable doubt now would be tantamount to an end run around the Bill of Rights.

Certainly, Austin will have rights in state court, including trial by jury and proof beyond a reasonable doubt, but it does not follow that he has such rights in this revocation proceeding. A state court proceeding would concern Austin's alleged violations of state law, and the jury would <u>not</u> be bound by this Court's

findings on the parallel violation of supervised release. The revocation proceedings before the Court concern only Austin's alleged breach of this Court's order imposing mandatory conditions of supervised release. Decades of precedent show that, when presented with the question whether this Court should require Austin to "serve out the balance of his sentence [because] he fail[ed] to abide by the rules," Morrissey, 408 U.S. at 478-79, the Court need not offer trial by jury merely because the alleged violations happen also to constitute state-law crimes. See Doka, 955 F.3d at 294 ("[A] violation of supervised release is not a separate basis for criminal punishment that requires a jury verdict and all that that entails.") (internal quotation marks omitted). Indeed, though the Second Circuit did not explicitly address this point, at least two of the violations at issue in Doka were state-law crimes. Id. at 293.[2]

Second, Austin argues that Doka does not control because the violations at issue here are covered by § 3583(g). He argues that § 3583(g) raises an issue not considered by the Second Circuit, in that it mandates imprisonment upon a finding of violation:

---

[2] Austin is correct that Justice Breyer's concurring opinion in Haymond relied upon the fact that the supervised release violations proscribed by § 3583(k) were also crimes, but his point was a categorical one: "§ 3583(k) applies only when a defendant commits" crimes. 139 S. Ct. at 2386 (Breyer, J. concurring in the judgment) (emphasis added). By contrast, § 3583(g) applies also to technical violations, such as "refus[al] to comply with drug testing." 18 U.S.C. § 3583(g)(3).

> If the defendant . . . possesses a controlled substance in violation of the condition set forth in subsection (d) . . .[,] the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

18 U.S.C. § 3583(g).

This Court agrees that Doka does not control that issue because the Second Circuit did not address the mandatory nature of § 3583(g). And in addressing the mandatory nature of a different provision, § 3583(k), in Haymond the plurality noted that "just like the facts the judge found at the defendant's sentencing hearing in Alleyne, the facts the judge found here increased 'the legally prescribed range of allowable sentences' in violation of the Fifth and Sixth Amendments. In this case, that meant Mr. Haymond faced a minimum of five years in prison instead of as little as none." 139 S. Ct. at 2378 (citation omitted). Similarly, Justice Breyer, concurring in the judgment, found § 3583(k) unconstitutional in part because "§ 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long." Id. at 2386.

Given the mandatory nature of § 3583(g), would this Court's factual findings by a preponderance of the evidence unconstitutionally "increase[] the legally prescribed range of allowable sentences"? The Court will consider the prescribed

-11-

minimum and the prescribed maximum separately.  With respect to the prescribed minimum, on the one hand, upon revocation the Court would need to "require the defendant to serve a term of imprisonment."  18 U.S.C. § 3583(g).  On the other hand, the statute specifies no mandatory minimum; the Court may impose any reasonable term.  See United States v. Wirth, 250 F.3d 165, 169 (2d Cir. 2001) (such a sentence must be affirmed unless "plainly unreasonable").  The Second Circuit has suggested that sentencing a defendant to a custodial drug treatment program might suffice, in appropriate circumstances.  Id. at 167 n.1.  Or the Court might sentence the defendant to a nominal term of imprisonment of one hour, or even one second, in the custody of the U.S. Marshals Service.  As Judge Nathan held in United States v. Hernandez, No. 14-CR-783 (AJN), 2019 WL 6324743, at *3-4 (S.D.N.Y. Nov. 26, 2019): "§ 3583(g) creates the most minimal of mandatory minimums.  A sentence of one day, one hour, or even time served would satisfy its command.  This de minimis mandate does not sufficiently distinguish § 3583(g) from § 3583(e)(3) for purposes of the jury trial right."

This Court agrees.  Whereas the judicial factfinding in Haymond exposed the defendant to "a minimum of five years in prison instead of as little as none," 139 S. Ct. at 2378 (plurality), here, judicial factfinding would not meaningfully change the

-12-

authorized minimum term; the minimum would increase by only a nominal, infinitesimally small amount.[3]

It should also be remembered that the hallowed right to trial by jury attaches only when defendants face serious sanctions for serious crimes. Cf. Blanton v. City of N. Las Vegas, 489 U.S. 538, 539 (1989) (no jury trial for "petty" offense of driving under the influence of alcohol). On balance, this Court concludes that the nominal, arbitrarily short increase in Austin's prison term required by § 3583(g) is not of constitutional moment.[4]

The above analysis relates to the minimum prison term Austin would face upon revocation. The Court now turns to the upper end of the prescribed range. The parties have long disputed whether, following his original conviction, Austin was subject to a

---

[3] A high school math teacher might explain that an arbitrarily small increase in a value is essentially indistinguishable from no increase at all using a limit function, to wit:

Original minimum sentence = 15 years

New minimum sentence = $15 + \lim_{n \to \infty} \frac{1}{n} = 15 + 0 = 15$ years

[4] The Court does not mean to suggest, outside the context of supervised release, that a conviction followed by an arbitrarily short but mandatory term of imprisonment is constitutionally equivalent to a conviction followed by no prison term at all. In those circumstances, the imposition of a prison term, even a nominal one, could have collateral consequences. But in the supervised release context, by definition, the supervisee has already served a prison term and remains on supervised release. Austin has suggested no collateral consequences that would follow a momentary, token "reimprisonment."

statutory maximum of life, as this Court originally found in 2007, or a statutory maximum of 10 years, as this Court found in 2017 when granting Austin's § 2255 motion. See Order Granting § 2255 Motion, ECF No. 42. This Court's 2017 opinion was vacated and remanded for further consideration in light of United States v. Thrower, 914 F.3d 770, 770 (2d Cir. 2019). See Mandate, ECF No. 57. Since then, this Court has opined that Austin's argument for a ten-year maximum "appears foreclosed by Thrower (though again, defense counsel is invited to respond)." Order Granting Motion to Remand, ECF No. 53, at 7. The parties submitted supplemental briefing, but the Court left the question open when it granted compassionate release, optimistically concluding that Austin's § 2255 motion was, "for all practical purposes, . . . moot" since only a few months of supervised release remained on Austin's sentence. Order Granting Motion for Reduction in Sentence, ECF No. 72, at 10 n.4. Now the question is again live.

The Haymond plurality recognized that § 3583(e) could "raise Sixth Amendment issues in a small set of cases," when "combining a defendant's initial and post-revocation sentences issued under § 3583(e) will . . . yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction." Haymond, 139 S. Ct. at 2384 (plurality); see also Doka, 955 F.3d at 298 n.38 (acknowledging the issue but pointing out that "the sum of Doka's initial and

post-revocation sentences . . . is well within the range of allowable sentences as prescribed by Congress and authorized by the jury's verdict of his underlying conviction . . . ."). The reason for this concern is that, when district courts revoke supervised release, the new sentences they impose are treated, for constitutional purposes, "as part of the penalty for the initial offense." Johnson v. United States, 529 U.S. 694, 700 (2000). Based only on the Court's own factual findings, the Court must not, therefore, impose a sentence that would cause the total penalty to exceed the sentence authorized by the original conviction, because "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." Blakely v. Washington, 542 U.S. 296, 304 (2004) (internal quotation marks and citation omitted).

If Austin is correct, despite Thrower, that the maximum authorized term of imprisonment following his original conviction was ten years (which he has now served), then imposing a further prison term now without trial by jury and proof beyond a reasonable doubt would unconstitutionally "exceed[] the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction." Haymond, 139 S. Ct. at 2384 (plurality).

The Court could address this issue in several ways: the Court could resolve the question whether the original conviction authorized a term of life or only of ten years. Or the Court could exercise its inherent authority to empanel a jury, obviating any constitutional concerns. But the Court chooses a third approach. Having held an evidentiary hearing on the alleged violations of supervised release, the Court will issue findings of fact and conclusions of law with respect to those charges. Then, if the Court finds that Austin committed one or both alleged violations, Austin is free to renew at sentencing his argument that the proper statutory maximum for his crime of conviction was ten years, despite Thrower. If the Court agrees, then, for the reasons stated herein, it cannot and will not impose a further prison term.

For the foregoing reasons, Austin's motion for trial by jury is hereby denied.

SO ORDERED.

Dated:  New York, NY
        November 17, 2020

_____
JED S. RAKOFF, U.S.D.J.